# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-21087-FAM

GEORGE TERSHAKOVEC, DIANA
TERSHAKOVEC, JOHN AUBREY, BYRON
HARPER, RICHARD KOWALCHIK, ERNESTO
LARIOS, SHAUNTI YANIK-LARIOS, JACQUES
RIMOKH, MARK HOCHSPRUNG, FRANK
PORTER, GREG ROBERTS, WAYNE LINN,
STEPHEN KELLY, JILL KELLY, JOSH LONG,
JOSE CRUZ, ATTILA GONDAN, HERBERT
ALLEY, ERIC KAMPERMAN, TRAVIS MCRAE,
TODD NEWTON, and ERIC EVANS, individually
and on behalf of all others similarly situated,

                    Plaintiffs,

    vs.

FORD MOTOR COMPANY,

                    Defendant.

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
## AND INCORPORATED MEMORANDUM OF LAW

### [REDACTED VERSION]

Stuart Z. Grossman (Fla. Bar No. 156113)
Rachel Furst (Fla. Bar No. 45155)
GROSSMAN ROTH YAFFA COHEN
2525 Ponce de Leon Blvd., Suite 1150
Coral Gables, FL 33134
Telephone: (888) 296-1681
Facsimile: (305) 285-1668
Email: szg@grossmanroth.com
Email: rwf@grossmanroth.com

Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: catherineg@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

## TABLE OF CONTENTS

<u>Page</u>

I.     INTRODUCTION ........................................................................... 6

II.    STATEMENT OF FACTS COMMON TO ALL CLASS MEMBERS ........................... 7

    A.    The Class Vehicles ........................................................................ 7

    B.    Ford conceived and marketed the Shelby as a high-performance, "track ready" and "track capable" vehicle. ........................................... 8

        1.    Plaintiffs and the proposed Classes wanted a high-performance, "track ready" and "track capable" vehicle and paid a premium for such performance. ............................................. 8

        2.    Ford marketed the Shelby as a "track capable," "all day track car." ........................................................................... 10

    C.    The Defect creates a serious safety hazard and renders the Class Vehicles unfit for both track and road use. ........................................ 12

    D.    Ford was well aware of the Defect prior to the Shelby ordering period and concealed the Defect. ...................................................... 13

        1.    Ford modified initial designs to protect already-large profit margins and sold Shelbys that Ford knew were not track capable. ...................................................................... 13

        2.    Ford concealed the Defect and failed to modify its track-heavy marketing campaign. ..................................................... 15

    E.    Ford refuses to repair the Defect yet modified the 2017 Shelby models so that they would be track capable ........................................ 18

    F.    Common repairs would render all Shelbys track capable and safe. ................... 19

III.    GENERAL LEGAL STANDARDS ............................................................ 19

IV.    THE PROPOSED CLASSES ARE ASCERTAINABLE ................................... 19

V.    THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(A) ..................................................................................... 20

    A.    The members of the Classes are so numerous that joinder is impracticable ................................................................................ 20

B.   Numerous common issues exist because the focus is on Ford's common course of conduct. ...................................................................21

C.   Plaintiffs' claims are typical of those of the Classes because the claims arise from a common course of conduct and are pled under common legal theories. .....................................................................22

D.   Plaintiffs and their counsel will adequately represent the interests of the Classes. ....................................................................................23

VI.   THE COURT SHOULD CERTIFY THE CLASSES UNDER RULE 23(B)(3) ........................................................................................................24

A.   Common issues of fact and law predominate because legal and factual questions will be resolved with proof common to all Plaintiffs and Class members. ...............................................................24

1.   Common questions of law predominate for Plaintiffs' consumer protection act claims. ................................................26

2.   Common questions of law predominate for Plaintiffs' fraudulent concealment claims. ...............................................29

3.   Common questions of law predominate for Plaintiffs' breach of implied warranty claims. .................................................32

4.   Common questions of law predominate for Plaintiffs' unjust enrichment claims. .....................................................................33

B.   Applying multi-state law does not preclude predominance. ..................34

1.   Consumer protection act grouping. ..........................................36

2.   Fraudulent concealment grouping. ...........................................37

3.   Breach of implied warranty grouping. .....................................38

4.   Unjust enrichment grouping. ....................................................39

C.   Plaintiffs will use common evidence to prove causation and the amount of damages. ................................................................................40

D.   A class action is a superior method of adjudicating this dispute. .........43

VII.   CONCLUSION .........................................................................................45

010678-11/1154865 V1

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abazari v. Rosalind Franklin Univ. of Med. & Sci.*,
    40 N.E.3d 264 (Ill. Ct. App. 2015) ...................................................................................30

*In re Abbott Labs. Norvir Antitrust Litig.*,
    2007 WL 1689899 (N.D. Cal. June 11, 2007) ...................................................................40

*Absolute Activist Value Master Fund Ltd. v. Devine*,
    2017 WL 3188502 (M.D. Fla. July 25, 2017) ...................................................................42

*Aceto Corp. v. TherapeuticsMD, Inc.*,
    953 F. Supp. 2d 1269 (S.D. Fla. 2013) .............................................................................33

*Ackerman v. Coca-Cola Co.*,
    2013 WL 7044866 (E.D.N.Y. July 18, 2013) ...................................................................27

*Adams v. King Cty.*,
    192 P.3d 891 (Wash. 2008)................................................................................................31

*Alcon Labs., Inc. v. Will Vision & Laser Ctrs., P.C.*,
    126 Wash. App. 1025 (Wash. Ct. App. 2005) ..................................................................38

*Allapattah Servs., Inc. v. Exxon Corp.*,
    333 F.3d 1248 (11th Cir. 2003) .......................................................................................40

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)....................................................................................................19, 25

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)...........................................................................................................19

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) .........................................................................................22

*In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*,
    2013 WL 4759649 (D. Mass. 2013) .................................................................................36

*Bass v. Stryker Corp.*,
    669 F.3d 501 (5th Cir. 2012) ...........................................................................................32

*Bautista v. Valero Mktg. & Supply Co.*,
    322 F.R.D. 509 (N.D. Cal. 2017)......................................................................................27

*Bennett v. John*,
　151 A.D.2d 711 (N.Y. App. Div. 1989) ..........................................................................34, 42

*Benton v. Snyder*,
　825 S.W.2d 409 (Tenn. 1992)...........................................................................................31

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*,
　687 F. Supp. 2d 897 (W.D. Mo. 2009), *clarified on denial of reconsideration*,
　2010 WL 286428 (W.D. Mo. Jan. 19, 2010) ....................................................................42

*Blue Cross Health Servs., Inc. v. Sauer*,
　800 S.W.2d 72 (Mo. Ct. App. 1990).................................................................................42

*Bober v. Glaxo Wellcome PLC*,
　246 F.3d 934 (7th Cir. 2001) ............................................................................................28

*Boeken v. Philip Morris, Inc.*,
　127 Cal. App. 4th 1640 (Cal. Ct. App. 2005) ...................................................................31

*In re Brand Name Prescription Drugs Antitrust Litig.*,
　1994 U.S. Dist. LEXIS 16658 (N.D. Ill. Nov. 15, 1994) .............................................41, 44

*Bridgestone Am.'s, Inc. v. IBM*,
　172 F. Supp. 3d 1007, 1018 (M.D. Tenn. 2016)...............................................................31

*Brown v. Birman Managed Care, Inc.*,
　42 S.W.3d 62 (Tenn. 2001)..............................................................................................32

*Brown v. Pro Football*,
　146 F.R.D. 1 (D.D.C. 1992)..............................................................................................41

*Brown v. SCI Funeral Servs. of Fla., Inc.*,
　212 F.R.D. 602 (S.D. Fla. 2003).................................................................................21, 24

*Bussey v. Macon Cty. Greyhound Park*,
　562 F. App'x 782 (11th Cir. 2014) ...............................................................................19, 20

*Cannon v. Nationwide Acceptance Corp.*,
　1997 U.S. Dist. LEXIS 20019 (N.D. Ill. Dec. 9, 1997).....................................................27

*In re Cardizem CD Antitrust Litig.*,
　218 F.R.D. 508 (E.D. Mich. 2003) ...............................................................................37, 40

*Carriuolo v. Gen. Motors Co.*,
　823 F.3d 977 (11th Cir. 2016) ................................................................................... *passim*

*Carter v. Jackson–Madison Cty. Hosp. Dist.*,
　2011 WL 1256625 (W.D. Tenn. Mar. 31, 2011) ...............................................................42

010678-11/1154865 V1

*Chamberlan v. Ford Motor Co.*,
223 F.R.D. 524 (N.D. Cal. 2004), *petition denied*, 402 F.3d 952 (9th Cir.
2005) .......................................................................................................................26

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) .................................................................................22

*In re Checking Account Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011) ...........................................................................35

*In re Checking Account Overdraft Litig.*,
286 F.R.D. 645 (S.D. Fla. 2012) ...........................................................................34

*In re Checking Account Overdraft Litig.*,
307 F.R.D. 656 (S.D. Fla. 2015) .....................................................................35, 40

*Cheminova Am. Corp. v. Corker*,
779 So. 2d 1175 (Ala. 2000) ..................................................................................39

*Cholakyan v. Mercedes- Benz USA, LLC*,
796 F. Supp. 2d 1220 (C.D. Cal. 2011) ...........................................................32, 39

*City of Goodlettsville, TN v. Priceline.com, Inc.*,
605 F. Supp. 2d 982 (M.D. Tenn. 2009) ...............................................................34

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ...........................................................................................19, 43

*Commonwealth v. Ortho-McNeil-Janssen Pharms., Inc.*,
52 A.3d 498 (Pa. Commw. Ct. 2012) ....................................................................31

*Commonwealth ex rel. Zimmerman v. Nickel*,
26 Pa. D. & C.3d 115 (Pa. D. & C. 1983) .............................................................29

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd*, 844 F.3d 1121 (9th Cir. 2017) ..........27

*Cote v. R.J. Reynolds Tobacco Co.*,
909 F.3d 1094 (11th Cir. 2018) .............................................................................31

*Cox v. Sears Roebuck & Co.*,
647 A.2d 454 (N.J. 1994) .......................................................................................27

*Craft v. Philip Morris Cos., Inc.*,
2003 WL 23355745 (Mo. Cir. Ct. Dec. 31, 2003) ................................................41

*CV Reit, Inc. v. Levy*,
144 F.R.D. 690 (S.D. Fla. 1992) ...........................................................................21

*D'Alessandro v. Lake Developers, II, LLC,*
    2012 WL 1900543 (Tenn. Ct. App. May 25, 2012) ..............................................38

*Daffin v. Ford Motor Co.,*
    458 F.3d 549 (6th Cir. 2006) ..............................................21, 22, 23, 25

*Daniel v. Ford Motor Co.,*
    806 F.3d 1217 (9th Cir. 2015) ..............................................27, 31

*Daugherty v. Jacobs,*
    187 S.W.3d 607 (Tex. Ct. App. 2006) ..............................................29

*Deegan v. Windermere Real Estate/Center-Isle, Inc.,*
    391 P.3d 582 (Wash. Ct. App. 2017) ..............................................32

*Dent v. NFL,*
    902 F.3d 1109 (9th Cir. 2018) ..............................................30

*Duhaime v. John Hancock Mut. Life Ins. Co.,*
    177 F.R.D. 54 (D. Mass. 1997) ..............................................21

*Dzielak v. Whirlpool Corp.,*
    2017 U.S. Dist. LEXIS 209106 (D.N.J. Dec. 20, 2017) ..............................................27

*Dzielak v. Whirlpool Corp.,*
    26 F. Supp. 3d 304 (D.N.J. 2014) ..............................................33

*Ebner v. Fresh, Inc.,*
    838 F.3d 958 (9th Cir. 2016) ..............................................28

*Edwards v. Ford Motor Co.,*
    603 F. App'x 538 (9th Cir. 2015) ..............................................27

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974) ..............................................44

*Everett v. TK-Taito, LLC,*
    178 S.W.3d 844 (Tex. Ct. App. 2005) ..............................................41

*Fayne v. Vincent,*
    301 S.W.3d 162 (Tenn. 2009) ..............................................29

*In re FCA US LLC Monostable Elec. Gearshift Litig.,*
    280 F. Supp. 3d 975 (E.D. Mich. 2017) ..............................................38

*Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau,*
    859 N.E.2d 473 (N.Y. 2006) ..............................................28

*Gennari v. Weichert Co. Realtors*,
    691 A.2d 350 (N.J. 1997) ..................................................................................... 38

*Gerke v. City of Kansas City*,
    493 S.W.3d 433 (Mo. Ct. App. 2016) ................................................................... 33

*Giammanco v. Giammanco*,
    625 N.E.2d 990 (Ill. App. Ct. 1993) .................................................................... 42

*Gilliland v. Mt. Vernon Hotel Co.*,
    321 P.2d 558 (Wash. 1958) ................................................................................... 32

*In re GM LLC Ignition Switch Litig.*,
    14-MD-2543, 14-MC-2543 (S.D.N.Y.) .............................................................. 35

*Greene v. Sears Prot. Co.*,
    2018 WL 3104300 (N.D. Ill. June 25, 2018) ...................................................... 27

*Gurley v. Montgomery First Nat'l Bank, N.A.*,
    160 S.W.3d 863 (Mo. Ct. App. 2005) ........................................................ *passim*

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................................. 37

*Harrogate Corp. v. Sys. Sales Corp.*,
    915 S.W.2d 812 (Tenn. Ct. App. 1995) ............................................................... 42

*Hastings-Murtagh v. Texas Air Corp.*,
    119 F.R.D. 450 (S.D. Fla. 1988) .......................................................... 20, 21, 23, 44

*Hernandez v. Lopez*,
    103 Cal. Rptr. 3d 376 (Cal. Ct. App. 2009) ........................................................ 42

*Hess v. Philip Morris USA, Inc.*,
    175 So. 3d 687 (Fla. 2015) ................................................................................... 30

*Hitchcock v. Delaney*,
    86 P.3d 73 (Or. Ct. App. 2004) ............................................................................ 42

*Hoeffner v. Orrick*,
    2008 WL 4065922 (N.Y. Sup. Ct. Aug. 11, 2008) ............................................. 42

*Hoving v. Lawyers Title Ins. Co.*,
    256 F.R.D. 555 (E.D. Mich. 2009) ...................................................................... 40

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
    545 N.E.2d 672 (Ill. 1989) ................................................................................... 33

*Hughes v. The Ester C Co.*,
  317 F.R.D. 333 (E.D.N.Y. 2016) ........................................................27

*Hulcher Servs. v. Emmert Indus. Corp.*,
  2016 Tex. App. LEXIS 928 (Tex. Ct. App. Jan. 28, 2016) ....................................29

*Isip v. Mercedes-Benz USA, LLC*,
  155 Cal. App. 4th 19 (Cal. Ct. App. 2007) ..............................................32

*Jersey Shore Sav. & Loan Ass'n v. Edelstein*,
  530 A.2d 1320 (N.J. Super. Ct. App. Div. 1989) ......................................42

*Jordan v. Wonderful Citrus Packing LLC*,
  2018 WL 4350080 (E.D. Cal. Sept. 10, 2018) ........................................42

*Keegan v. Am. Honda Motor Co.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ......................................................25

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) .................................................. *passim*

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ......................................................22

*Kwikset Corp. v. Superior Court*,
  246 P.3d 877 (Cal. 2011) ............................................................41

*Lazar v. Superior Court*,
  909 P.2d 981 (Cal. 1996) ............................................................42

*LEM 2Q, LLC v. Guar. Nat'l Title Co.*,
  144 A.3d 174 (Pa. Super. Ct. 2016) ..................................................31

*Liodas v. Sahadi*,
  19 Cal. 3d 278 (Cal. 1977) ..........................................................38

*Lites v. Great Am. Ins. Co.*,
  2000 WL 875698 (E.D. Pa. June 23, 2000) ............................................41

*Lucas v. Breg, Inc.*,
  212 F. Supp. 3d 950 (S.D. Cal. 2016) ................................................31

*Maloney v. Pihera*,
  573 N.E.2d 1379 (Ill. App. Ct. 1991) ................................................42

*Mandarin Trading Ltd. v. Wildenstein*,
  944 N.E.2d 1104 (N.Y. 2011) ........................................................34

010678-11/1154865 V1

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012).............................................................................23

*McManus v. Fleetwood Enters., Inc.*,
    320 F.3d 545 (5th Cir. 2003) ........................................................................33

*McRae v. Bolstad*,
    646 P.2d 771 (Wash. Ct. App. 1982), *aff'd*, 676 P.2d 496 (Wash. 1984) .............................42

*Meehan v. Cheltenham Twp.*,
    189 A.2d 593 (Pa. 1963) ...............................................................................42

*Menocal v. GEO Grp., Inc.*,
    882 F.3d 905 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 143 (2018)........................................34

*In re Mercedes Benz Tele Aid Contract Litig.*,
    267 F.R.D. 113 (D.N.J. 2010).........................................................................40

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009), *clarified*, 267 F.R.D. 113 (D.N.J. 2010),
    *modified on reconsideration*, 2010 WL 2976496 (D.N.J. July 22, 2010) ..............................31

*Mills v. Foremost Ins. Co.*,
    511 F.3d 1300 (11th Cir. 2008) .....................................................................41

*Motley v. Jaguar Land Rover N. Am., LLC*,
    2012 WL 5860477 (Conn. Super. Ct. Nov. 1, 2012).....................................................22, 23

*Muir v. Playtex Prods., LLC*,
    983 F. Supp. 2d 980 (N.D. Ill. 2013) ....................................................................41

*In re MyFord Touch Consumer Litig.*,
    2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ......................................................33, 38, 39

*N. States Power Co. v. ITT Meyer Indus., Div. of ITT Grinnell Corp.*,
    777 F.2d 405 (8th Cir. 1985) .........................................................................39

*Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*,
    619 A.2d 262 (N.J. Super. Ct. Law Div. 1992), *aff'd*, 645 A.2d 1194 (N.J.
    Super. Ct. App. Div. 1994) ........................................................................33, 34

*Nguyen v. Nissan N. Am.*,
    2019 U.S. App. LEXIS 22296 (9th Cir. July 26, 2019).........................................................43

*Norhill Energy LLC v. McDaniel*,
    517 S.W.3d 910 (Tex. Ct. App. 2017) ....................................................................42

*Oden v. Boston Sci. Corp.*,
   330 F. Supp. 3d 877 (E.D.N.Y. 2018) ...................................................................30

*Pape v. Knoll*,
   687 P.2d 1087 (Or. Ct. App. 1984)......................................................................42

*Parkinson v. Hyundai Motor Am.*,
   258 F.R.D. 580 (C.D. Cal. 2008)........................................................................26

*Peterson v. Kitsap Cmty. Fed. Credit Union*,
   287 P.3d 27 (Wash. 2012)...................................................................................29

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   252 F.R.D. 83 (D. Mass. 2008)....................................................................35, 37

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)............................................................................................19

*Piazza v. EBSCO Indus. Co.*,
   273 F.3d 1341 (11th Cir. 2001) ..........................................................................22

*Pickett v. IBP, Inc.*
   2001 U.S. Dist. LEXIS 22453 (M.D. Ala. Dec. 21, 2001) ...................................41

*Pirozzi v. Apple Inc.*,
   913 F. Supp. 2d 840 (N.D. Cal. 2012) ................................................................33

*In re Polyurethane Foam Antitrust Litig.*,
   2015 WL 4459636 (N.D. Ohio July 21, 2015) ....................................................37

*Pottinger v. City of Miami*,
   720 F. Supp. 955 (S.D. Fla. 1989) ..........................................................21, 22, 23

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ..........................................................................22

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
   148 F.3d 283 (3d Cir. 1998)........................................................................35, 36

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) .............................................................................42

*Ragland Mills, Inc. v. Gen. Motors, Corp.*,
   763 S.W.2d 357 (Mo. Ct. App. 1989)................................................................32

*Rikos v. P&G*,
   799 F.3d 497 (6th Cir. 2015) .............................................................................34

*Rosen v. J.M. Auto Inc.*,
   270 F.R.D. 675 (S.D. Fla. 2009) ................................................................. *passim*

*S & J, Inc. v. McLoud & Co., L.L.C.*,
   108 S.W.3d 765 (Mo. Ct. App. 2003) .......................................................33

*Samson Lone Star Ltd. P'ship v. Hooks*,
   497 S.W.3d 1 (Tex. Ct. App. 2016) ..........................................................42

*Sanchez-Knutson v. Ford Motor Co.*,
   310 F.R.D. 529 (S.D. Fla. 2015) .........................................................20, 25

*Sauro v. L.A. Fitness Int'l, LLC*,
   2013 WL 978807 (D.N.J. Feb. 13, 2013) .................................................28

*Schryburt v. Olesen*,
   475 So. 2d 715 (Fla. Dist. Ct. App. 1985) ...............................................42

*Schumacher v. Tyson Fresh Meats, Inc.*,
   221 F.R.D. 605 (D.S.D. 2004) .................................................................40

*SecurAmerica Bus. Credit v. Schledwitz*,
   2014 Tenn. App. LEXIS 178 (Tenn. Ct. App. Mar. 28, 2014) .................27

*Simon v. Philip Morris*,
   124 F. Supp. 2d 46 (E.D.N.Y. 2000) .......................................................36

*Sosna v. Iowa*,
   419 U.S. 393 (1975) .................................................................................23

*Spence v. Moody*,
   1987 Tenn. App. LEXIS 3078 (Tenn. Ct. App. Nov. 18, 1987) ...............41

*Steele v. Depuy Orthopaedics, Inc.*,
   295 F. Supp. 2d 439 (D.N.J. 2003) ..........................................................30

*Steigerwald v. BHH, LLC*,
   2016 WL 695424 (N.D. Ohio Feb. 22, 2016) ..........................................36

*Steinberg v. Chicago Med. Sch.*,
   371 N.E.2d 634 (Ill. 1977) .......................................................................31

*Strawn v. Farmers Ins. Co. of Or.*,
   258 P.3d 1199 (Or. 2011) .........................................................................31

*Subar, Inc. v. Precision Plastics, Inc.*,
   1998 WL 150992 (E.D. Pa. Mar. 27, 1998) .............................................42

*Suchanek v. Sturm Foods, Inc.*,
    2018 WL 6617106 (S.D. Ill. July 3, 2018) ..............................................................37

*Tefel v. Reno*,
    972 F. Supp. 608 (S.D. Fla. 1997) ........................................................................23

*In re Terazosin Hydrochloride Antitrust Litig.*,
    220 F.R.D. 672 (S.D. Fla. 2004)........................................................21, 22, 40

*Tershakovec v. Ford Motor Co.*,
    2018 U.S. Dist. LEXIS 116130 (S.D. Fla. 2018)..........................................32, 33

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. 2010), *amended*, 2011 WL 3268649 (N.D. Cal.
    July 28, 2011).......................................................................................................37

*Thiedemann v. Mercedes-Benz USA, LLC*,
    872 A.2d 783 (N.J. 2005)................................................................................41, 42

*Thompson v. R.J. Reynolds Tobacco Co.*,
    2013 WL 12075969 (W.D. Mo. May 3, 2013) .......................................................30

*In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Practices, & Prods.
    Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................29

*In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Practices & Prods.
    Liab. Litig.*,
    8:10-ml-02151 (C.D. Cal.)....................................................................................35

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)...................................................................................24, 25

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
    160 F. Supp. 3d 1214 (D. Or. 2016) ...............................................................30, 34

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) .............................................................................23

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
    643 F. Supp. 2d 1256 (W.D. Wash. 2009)..............................................................28

*Villareal v. Grant Geophysical, Inc.*,
    136 S.W.3d 265 (Tex. Ct. App. 2004) ....................................................................34

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)...........................................................................24, 45

010678-11/1154865 V1

*Visual Commc'ns, Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*,
    611 F. Supp. 2d 465 (E.D. Pa. 2009) ......................................................................32

*Walco Invs., Inc. v. Thenen*,
    168 F.R.D. 315 (S.D. Fla. 1996) .....................................................................19, 22

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
    249 S.W.3d 301 (Tenn. 2008).................................................................................32

*Walsh v. Pittsburgh Press Co.*,
    160 F.R.D. 527 (W.D. Pa. 1994) ...........................................................................41

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
    208 F.3d 288 (1st Cir. 2000)..................................................................................35

*Weigel v. Ron Tonkin Chevrolet Co.*,
    690 P.2d 488 (Or. 1984) ........................................................................................41

*Weinberg v. Hertz Corp.*,
    499 N.Y.S.2d 693 (N.Y. App. Div. 1986), *aff'd*, 509 N.E.2d 347 (N.Y. 1987)......................31

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) .................................................................................22

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016) .....................................................................34

*Wieczoreck v. H & H Builders, Inc.*,
    475 So. 2d 227 (Fla. 1985)....................................................................................38

*Wilner v. Allstate Ins. Co.*,
    893 N.Y.S.2d 208 (N.Y. App. Div. 2010) .............................................................41

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) .....................................................................22, 25, 39

*Young v. Young*,
    191 P.3d 1258 (Wash. 2008)..............................................................................34, 42

## STATUTES

810 ILCS 5/2-714 ......................................................................................................41

13 PA.C.S. § 2314(b) ................................................................................................32

CAL. BUS. & PROF. CODE § 17200 .............................................................................26

CAL. CIV. CODE § 1770(a) .........................................................................................26

CAL. CIV. CODE § 1780(a) .................................................................................................41

CAL. COM. CODE § 2314(2) ..............................................................................................32

CAL. COM. CODE § 2714 ....................................................................................................41

FLA. STAT. § 501.204(1) .....................................................................................................26

ILL. COMP. STAT. 505/2 ......................................................................................................26

MO. CODE REGS. tit. 15, § 60-9.020(1) .............................................................................28

MO. CODE REGS. tit. 15, § 60-9.020(2) .............................................................................28

MO. REV. STAT. § 400.2-314(2) .........................................................................................32

MO. REV. STAT. § 400.2-714 ..............................................................................................41

MO. REV. STAT. § 407.020(1) .............................................................................................26

MO. REV. STAT. § 407.0025 ...............................................................................................41

N.J. STAT. § 12A:2-314 ......................................................................................................32

N.J. STAT. § 12A:2-714 ......................................................................................................41

N.J. STAT. § 56:8-2 .............................................................................................................26

N.Y. GEN. BUS. LAW § 349(a) ..........................................................................................26

3 PENN. STAT. § 201-2(4)(xxi) ...........................................................................................26

13 Pa.C.S.A.§ 2714 ..............................................................................................................41

TENN. CODE ANN. § 47-18-104 ..........................................................................................26

TENN. CODE ANN. § 47-2-714 ............................................................................................41

TEX. BUS. & COM. CODE § 2.314 ......................................................................................32

TEX. BUS. & COM. CODE § 2.714 ......................................................................................41

TEX. BUS. & COM. CODE § 17.45(5) ..................................................................................26

UCC § 2-314 ....................................................................................................................32, 39

WASH. REV. CODE § 19.86.020 ..........................................................................................26

WASH. REV. CODE § 19.86.090 ..........................................................................................41

### OTHER AUTHORITIES

FED. R. CIV. P. 23 ............................................................................................ *passim*

American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b)
    (2010) .................................................................................................... 36

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.23 (4th ed. 2004) ......................... 36

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (4th ed. 2004) ....................... 35

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.754 (4th ed. 2004) ....................... 36

NEW JERSEY JURY INSTR. CIV. 4.22B ....................................................................... 32

RESTATEMENT (FIRST) OF RESTITUTION § 1 .......................................................... 33, 39

TENN. PATTERN INST. CIVIL § 8.38 ......................................................................... 31

010678-11/1154865 V1

## MOTION

Pursuant to FED. R. CIV. P. 23, Plaintiffs respectfully move for class certification based on the facts and authorities set forth in the following Memorandum of Law and accompanying Appendices A-I.  The proposed Classes are defined below under three alternatives to be chosen by the Court in the exercise of its wide discretion under Rule 23 (and as discussed in detail in Section VI.B of the Memorandum of Law).  For each definition, "Class Vehicle" refers to a Ford 2016 Shelby Mustang with a Base or Technology Package.  Plaintiffs also move to be appointed representatives of the Classes, and to appoint the following firms as Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Grossman Roth Yaffa Cohen, P.A. and Hagens Berman Sobol Shapiro LLP.

### FIRST ALTERNATIVE:  INDIVIDUAL STATE CLASSES

### California Class

All persons in the State of California who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "California Class").  The proposed California Class Representatives are Jacques Rimokh, Ernesto Larios, and Shaunti Yanik-Larios.

### Florida Class

All persons in the State of Florida who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Florida Class").  The proposed Florida Class Representatives are John Aubrey, Byron Harper, George and Diana Tershakovec, and Richard Kowalchik.

### Illinois Class

All persons in the State of Illinois who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Illinois Class").  The proposed Illinois Class Representatives are Mark Hochsprung and Frank Porter.

### Missouri Class

All persons in the State of Missouri who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Missouri Class").  The proposed Missouri Class Representative is Greg Roberts.

### New Jersey Class

All persons in the State of New Jersey who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "New Jersey Class").  The proposed New Jersey Class Representative is Wayne Linn.

**New York Class**

All persons in the State of New York who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "New York Class"). The proposed New York Class Representatives are Stephen and Jill Kelly.

**Oregon Class**

All persons in the State of Oregon who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Oregon Class"). The proposed Oregon Class Representative is Josh Long.

**Pennsylvania Class**

All persons in the State of Pennsylvania who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Pennsylvania Class"). The proposed Pennsylvania Class Representative is Jose Cruz.

**Tennessee Class**

All persons in the State of Tennessee who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Tennessee Class"). The proposed Tennessee Class Representative is Attila Gondan.

**Texas Class**

All persons in the State of Texas who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Texas Class"). The proposed Texas Class Representatives are Herbert Alley, Eric Kamperman, Travis McRae, and Todd Newton.

**Washington Class**

All persons in the State of Washington who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Washington Class"). The proposed Washington Class Representative is Eric Evans.

### SECOND ALTERNATIVE:  BELLWETHER STATE CLASSES

**California Class**

All persons in the State of California who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "California Class"). The proposed California Class Representatives are Jacques Rimokh, Ernesto Larios, and Shaunti Yanik-Larios.

**Florida Class**

All persons in the State of Florida who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Florida Class"). The proposed Florida Class Representatives are John Aubrey, Byron Harper, George and Diana Tershakovec, and Richard Kowalchik.

**Missouri Class**

All persons in the State of Missouri who purchased a Class Vehicle from a Ford-authorized dealer or distributor (the "Missouri Class").  The proposed Missouri Class Representative is Greg Roberts.

### THIRD ALTERNATIVE:  STATE-LAW GROUPINGS

**Consumer Protection Classes**

*The Unfair and Deceptive Conduct Consumer Protection Class*:  All persons in the States of California, Florida, Illinois, Missouri, New Jersey, New York, Pennsylvania, Tennessee, and Washington who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are Jacques Rimokh, Ernesto Larios, Shaunti Yanik-Larios, John Aubrey, Byron Harper, George and Diana Tershakovec, Richard Kowalchik, Mark Hochsprung, Frank Porter, Greg Roberts, Wayne Linn, Stephen and Jill Kelly, Jose Cruz, Attila Gondan, and Eric Evans.

*The Omissions Consumer Protection Class*:  All persons in the States of Illinois and New Jersey who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are Mark Hochsprung, Frank Porter, and Wayne Linn.

*The Unconscionable Acts or Practices Consumer Protection Class*:  All persons in the States of New Jersey and Texas who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are Wayne Linn, Herbert Alley, Eric Kamperman, Travis McRae, and Todd Newton.

**Fraudulent Concealment Classes**

*The Fraudulent Concealment Exclusive or Superior Knowledge Class*:  All persons in the States of California, Illinois, Missouri, New York, Pennsylvania, Tennessee, and Washington who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are Jacques Rimokh, Ernesto Larios, Shaunti Yanik-Larios, Mark Hochsprung, Frank Porter, Greg Roberts, Stephen and Jill Kelly, Jose Cruz, Attila Gondan, and Eric Evans.

- *The Fraudulent Concealment Exclusive or Superior Knowledge Class—Reasonable Reliance Subclass*:  All persons in the State of Washington who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Subclass Representative is Eric Evans.

- *The Fraudulent Concealment Exclusive or Superior Knowledge Class—*

- 3 -

*Preponderance of the Evidence Subclass*:  All persons in the States of California and Tennessee who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Subclass Representatives are Jacques Rimokh, Ernesto Larios, Shaunti Yanik-Larios, and Attila Gondan.

*The Fraudulent Concealment Partial Disclosure Class*:  All persons in the States of Florida, New Jersey, and Oregon who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are John Aubrey, Byron Harper, George and Diana Tershakovec, Richard Kowalchik, Wayne Linn, and Josh Long.

- *The Fraudulent Concealment Partial Disclosure Class—Reasonable Reliance Subclass*:  All persons in the State of New Jersey who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Subclass Representative is Wayne Linn.

- *The Fraudulent Concealment Partial Disclosure Class—Preponderance of the Evidence Subclass*:  All persons in the State of Florida who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Subclass Representatives are John Aubrey, Byron Harper, George and Diana Tershakovec, and Richard Kowalchik.

**Implied Warranty Class**

All persons in the States of California, Missouri, New Jersey, Pennsylvania, and Texas who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are Jacques Rimokh, Ernesto Larios, Shaunti Yanik-Larios, Greg Roberts, Wayne Linn, Jose Cruz, Herbert Alley, Eric Kamperman, Travis McRae, and Todd Newton.

**Unjust Enrichment Classes**

*Unjust Enrichment Class 1*:  All persons in the States of California and Illinois who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are Jacques Rimokh, Ernesto Larios, Shaunti Yanik-Larios, Mark Hochsprung, and Frank Porter.

*Unjust Enrichment Class 2*:  All persons in the States of Florida, Oregon, Pennsylvania, Tennessee, Washington who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are John Aubrey, Byron Harper, George and Diana Tershakovec, Richard Kowalchik, Josh Long, Jose Cruz, Attila Gondan, and Eric Evans.

- 4 -

*Unjust Enrichment Class 3*:   All persons in the States of New Jersey and New York who purchased a Class Vehicle from a Ford-authorized dealer or distributor.   The proposed Class Representatives are Wayne Linn and Stephen and Jill Kelly.

*Unjust Enrichment Class 4*:  All persons in the States of Missouri and Texas who purchased a Class Vehicle from a Ford-authorized dealer or distributor.  The proposed Class Representatives are Greg Roberts, Herbert Alley, Eric Kamperman, Travis McRae, and Todd Newton.

<u>**MEMORANDUM OF LAW**</u>

## I.   INTRODUCTION

Each 2016 Shelby Mustang GT350 Base Model and Technology Package vehicles ("Class Vehicles" or "Shelby(s)") is defective because it overheats prematurely and cannot be driven at sustained high speeds on a racetrack or on public roadways (the "Defect").[1] Ford knew this before the Class Vehicles were sold, yet failed to disclose this highly material fact and, instead, marketed the vehicles as "track capable." *See infra* at II.D.

The common evidence overwhelmingly supports class certification. Rule 23(a)(1) numerosity is present because each proposed Class is comprised of a sufficient number of Class Vehicle owners, making joinder impracticable. *See infra* V.A. There are many common questions of law and fact arising from the uniform Defect, Ford's knowledge thereof, and Ford's uniform omissions, thus satisfying Rule 23(a)(2) commonality. The uniform Defect demonstrated by Ford's documents and Plaintiffs' expert, and the Defect's impact on each Class, give rise to common questions for all Plaintiffs and Class members. *See infra* at V.B.

Rule 23(a)(3)'s typicality requirement is also satisfied. Plaintiffs' claims are typical of the claims of all Class members because Ford subjected each Class member to the same common omissions, and all Class members suffered the same injury as a result of the uniform Defect and Ford's misconduct. *See infra* at V.C. And Rule 23(a)(4)'s adequacy of representation requirement is fulfilled because Plaintiffs' interests are fully aligned with the Classes they seek to represent, and Plaintiffs are represented by well-qualified counsel who meet the requirements of Rule 23(g) and are diligently prosecuting the claims on behalf of each Class. The interests of Plaintiffs and Class members are co-extensive given that each Plaintiff, like each Class member, has a strong interest in proving Ford's liability and obtaining redress. *See infra* at V.D.

 Plaintiffs are entitled to certification under Rule 23(b)(3) because common issues of law or fact predominate over questions affecting individual Class members, and class treatment is superior to other methods of adjudication. Common issues predominate because the salient legal and factual questions in this case will be resolved with proof common to all Plaintiffs and members of each Class. Within each Class, Class Vehicles suffer a unifying Defect; Ford was aware of the

---

[1] 

Ex. 8.

Defect at the time the vehicles were sold; Ford had a duty to disclose its knowledge but failed to do so; and the facts that Ford failed to disclose were material. This evidence is essential to every Class member's effort to establish liability and every Class member's entitlement to relief. *See infra* at VI.A. Predominance is buttressed by the nature of the common proof required to calculate Class loss and restitution. Plaintiffs' damages expert presents a model for estimating Class-wide loss based on the estimated market costs of the necessary parts and labor and associated costs basis to restore the benefit-of-the-bargain. *See infra* at VI.C.

Class treatment is superior under Rule 23(b)(3) because nearly all Class members have claims that are too small to litigate individually, and, indeed, the Courthouse doors will be closed to almost all of these consumers unless a Class is certified. Ford has vigorously defended against Plaintiffs' claims, and no consumer can prove this case without the pooling of resources offered by the class mechanism. Further, adjudicating claims in a single proceeding before this Court, which is already intimately familiar with the subject matter of this case, is much more efficient than a multiplicity of suits here and elsewhere that would unduly burden the judicial system. A class action is a superior method of adjudicating Plaintiffs' claims. *See infra* at VI.D.

Plaintiffs' case will rise or fall on common proof, that is, on facts common to most if not all members of each proposed Class. The glue that binds all Class members together is Ford's conduct towards each Class as a whole. The Defect is uniform across all Class Vehicles, as is the remedy. Given this common evidentiary focus, and because all required elements of Fed. R. Civ. P. 23(a) and (b)(3) are satisfied, the Court should certify the proposed Classes and Subclasses.

## II. STATEMENT OF FACTS COMMON TO ALL CLASS MEMBERS

### A. The Class Vehicles.

Ford offered the 2016 Mustang Shelby GT350s in five trim levels, called "packages," at the following manufacturer suggested retail prices (MSRP) (Ex. 1)[2]:

| Trim Level | MSRP[3] | Ford Profit[4] |
|---|---|---|
| GT350 Base Model | $49,995 | ■ |

---

[2] All "Ex." references cited herein are attached to the Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Class Certification submitted herewith.

[3] Ex. 1.

[4] Ex. 2 at 132:20-133:3.

| | | |
|---|---|---|
| GT350 Track Package | $56,495 | ■■ |
| GT350 Technology Package | $57,495 | ■■ |
| GT350R / GT350 R with Electronics Package | $63,495-<br>$66,495 | ■■ |

The "Base" package included high performance components, including a 5.2L V8 "Voodoo" 526 HP engine with a flat plane crank, 8250 [RPM] "redline," and a TREMEC TR-3160 6-speed manual transmission. The "Technology" package, ■■■■■■■■■■■■■■■ ■■■■■■■■■■ included all of these features plus a Magneride suspension, SYNC 3, and other comforts like wider seats. The "Track" package had narrower seats, no SYNC 3, but—critically— included transmission and differential coolers. *The Class Vehicles are limited to the Base Model and Technology Package vehicles.*[5] Ford launched the GT350 Marketing Campaign in November 2014 and ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■ Ex. 5.

**B.**     **Ford conceived and marketed the Shelby as a high-performance, "track ready" and "track capable" vehicle.**

   **1.**     **Plaintiffs and the proposed Classes wanted a high-performance, "track ready" and "track capable" vehicle and paid a premium for such performance.**

Plaintiffs are among a segment of buyers called "Performance Enthusiasts," who are ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■[6] Ex. 4 at 38:14-17. First introduced in 1965, the Shelby brand of Mustang has been marketed by Ford over the decades as a high-performance vehicle, and consumers came to associate the Shelby with racetrack use. Ford has recognized that there are "v■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■"[7] and Ford has found "■■■■■■■■■■■■■■" Shelby customers in the Performance Enthusiast category. Ex. 6 at 4. For Performance Enthusiasts, the ability to participate in driving events known as "track days" is an important purchase consideration. *See* Exs. 83-104; Ex. 7 at 10-12. A "track day" is

---

[5] ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■ Ex. 60 at Tab 7.
   [6] Plaintiffs and Plaintiffs' experts use the term "closed race tracks", "closed course tracks" and "closed road courses" interchangeably to denote track use.
   [7] Ex. 4 at 24:17-18.

a well-known and commonly understood event in which owners drive cars at high-performance intervals on a closed course track.  Plaintiffs have all indicated their understanding that a track day is comprised of multiple sessions of approximately 15-30 minutes each.  *See* Exs. 83-104. Established American track venues and track organizations consistently represent that track day programs consist of multiple sessions of approximately 20 minutes each.  *See* Exs. 7 at 19; Ex. 8 at ¶ 82. ██████████████████████████████

███████████████████████████ *See* Ex. 9 at 160:12-16; Ex. 10 at 34:2-10; Ex. 11 at 94:3-10; Ex. 4  at 92:4-13; Ex. 2 at 167:15-17, 262:19-22; Ex. 12  at 171:9-13; Ex. 13  at 173:22-174:1; Ex. 14 at 70:5-15; *see also* Ex. 15 ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████ Ex. 7 at 16.

██████████████ Ex. 8 at ¶ 94.

███████████████████████ ” Ex. 16.

███████████████████████████████████████████████

██████████ Ex. 17.

███████████████████████████████████████████████

████████████ Ex. 18 (emphasis added); *see also* Ex. 7 at 17-18.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ Ex. 19.[8]

███████████████████████████████████████████████

█████████████████████.  For instance, Plaintiffs have all confirmed they were willing to pay a premium for a car capable of occasional track use. Exs. 83-104.  All Plaintiffs also indicated that track capability was material, confirming that they would not have bought, or paid less for, their

---

[8] In a telling admission as to how highly material it is for a Shelby Mustang to adequately perform on the track, a July 2019 Motor Trend article notes that: “Ford promises this Mustang can hit 180 MPH and *won't overheat on the track*.” Ex. 20 (Motor Trend Article) (emphasis added).

Shelby had they known the cars were not track capable.  *See* Exs. 83-104; Ex. 7 at 18-21.
Accordingly, the Shelby GT350 was priced higher than the other Ford Mustangs, with a premium
of ███████████████████  Exs. 1, 21, 22.  To justify this price premium, Ford had to ████████
███████████████████████████████████████████████████████████  *Id.* ████████
████████████████████████████████████████████████████████████████████████
██████  Ex. 4 at 24:2-25:14 ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████  Ex. 23 at 8.
"Shelby GT350 raises the bar significantly over the already very capable 2015 Mustang GT
Performance Pack."  Ex. 24.

     **2.**      **Ford marketed the Shelby as a "track capable," "all day track car."**

███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████  Ex. 7 at 26-39.  ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████  .  *Id.*  ██████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████  *See* Ex. 2 at 149:2-13 (██████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████  .  Ex. 7 at 39-44.

     Ford sought to make the Shelby GT350 synonymous with track use.  According to Jim
Owens[10], ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

---

[9] ███████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
█████████████████████████  Ex. 25.

[10] The names and positions of the key employees working on the 2015-2016 Shelby GT350s
can be found in Appendix A.



Ex. 26.  This message was consistent with Ford marketing materials explaining that the Shelby GT350 was "                                                              (Ex. 27) and

Ex. 28 at 14.

Indeed, Ford's marketing materials contained an overwhelming amount of "track capable," "track ready" and "all day track" references.  The first Shelby GT350 press release, issued in November 2014, alone, contains the following deceptive statements (Ex. 29 at 17):

- "a world-class performance vehicle, designed to tackle the planet's most challenging roads-an all day track car that's also street legal";
- "when we started working on this car, we wanted to build the best possible Mustang for the places we most love to drive – challenging back roads with a variety of corners and elevations changes – and the track on weekends, said Raj Nair, Ford group vice president";
- "the track capability is enhanced by the output characteristics of the engine";
- "[d]ue to significant speeds the car can develop, GT350 features the most track-credible brake system ever offered on a Ford vehicle";
- "[t]he custom tires are designed to deliver maximum grip on the road or at the track"; and
- "[w]e tested endlessly on the most challenging roads and tracks in the world[.]"

Other examples of Ford's marketing during this period, incorporating the ubiquitous "track" messaging, are included in Appendix B.

All certified Ford dealers were provided with



(Ex. 2 at 54:11-17),

D.E. 23.

- ███████████████████████████████████████████████████
  █████████████████████████████████████████████████
  ██████████████████ Ex. 2 at 165:5-21.

**C.    The Defect creates a serious safety hazard and renders the Class Vehicles unfit for both track and road use.**

███████████████████████████████████████████████████

████████████████████████████████████████ Ex. 8 at ¶ 30. ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████. *Id*. at ¶¶ 211-229.  As discussed below, the Defect resulted █████████████

███████████████████████████████████. *See* Section II.D.1, *infra*.

Instead of fixing the Defect, Ford chose to █████████████████████████████████

███" █████████████████████████████████████████████████

████████████ *Id*. at ¶ 271. ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████.″ *Id*. at ¶

187. ███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████ *Id*. at ¶ 178.

Ford is likely to argue that ███████████████████████████████████████

███████████████████████████████████████████ Ex. 30. ████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ *See* Ex. 8 at ¶ 360.

In addition, Limp Mode itself presents a safety hazard, because Ford does not disclose Limp Mode in any marketing or dealer pre-purchase materials, nor does the car give the driver any forewarning.  Consequently, unprepared drivers first experience the dangerous ramifications of Limp Mode during peak driving speeds and RPMs—precisely the time when a driver should be focused on the track or road.  Ex. 8 at ¶¶ 195-197.  Plaintiffs have experienced harrowing Limp Mode incidents on closed road courses and public roadways.  *See,* Appendix D.  Below are some examples from that Appendix:

> "I was at, like, the apex of the turn where there's maximum lateral amount of forces, and all of the sudden the car lets go.  It was like hitting the brakes.  I didn't even touch the brake.  It's like I'm leaning forward, because the engine let go.  I thought – I thought I blew the engine up or something. […] And – and that's when I realized I actually went into limp mode." – Atilla Gondan.

> "The first time the vehicle went into limp mode I really wasn't sure what was going on.  I was concentrating on driving and all of a sudden it wasn't – I believe the [RPM] fell off down to a certain number and it wasn't accelerating."  – Stephen Kelly.

> "It slowed down, and there was no way to get back up to appropriate speed for the lane that I was in on the Turnpike."  "[A]t this point in time, I was a danger on the Turnpike, with me being in the left lane, all of the sudden going to below the speed limit, having cars coming up behind me and honking.  […] I tried accel --- hitting the gas pedal.  Nothing happened.  I tried downshifting.  Nothing happened.  I got off of 152, and changed my underwear." – George Tershakovec.

Plaintiffs have attested to the frightening nature of Limp Mode.  Appendix D.  Some describe their Shelbys unexpectedly decelerating from 140 mph while on a track alongside speeding cars.  Ex. 31 at 48:6-11.  Others describe entering Limp Mode unexpectedly on public roadways.  Appendix D.  And, Ford's own records are replete of instances of Limp Mode on public roadways and racetracks, under all sorts of conditions, from coast to coast.  *Id.*

**D.    Ford was well aware of the Defect prior to the Shelby ordering period and concealed the Defect.**

    **1.    Ford modified initial designs to protect already-large profit margins and sold Shelbys that Ford knew were not track capable.**

In Ford's attempt to deliver to consumers ███████████ early planning documents reveal ███████████████████████████████████████



████████████ Ex. 8 at ¶ 212. ██████████████████████

████████████████████████████████████████████████

████████████████████████████ . Ex. 32. ████████████



Ex. 33 at 53:7-16. *Id.* at 55:6-8.

Ex. 34. It

Ex. 4 at 131:6-18.

Ex. 8 at ¶ 238.

Ex. 14 at 155:19-156:6.  B

Ex. 35; Ex. 33 at 104:22-106:18.

. *Id.* at 106:19-22.

Ex. 9 at 100:22-102:6.

Ex. 5.

Ex. 36 (emphasis added).

. *Id.*

x. 37.



Ex. 38.[11]

Ex. 12 at 219:9-222:6.

Ex. 40.

. Ex. 8 at 30.

2.    **Ford concealed the Defect and failed to modify its track-heavy marketing campaign.**

*See* Ex. 41.

Ford created and disseminated

[11] When Dave Pericak took over as director of Ford Performance in December 2014, he learned

Ex. 39.

marketing materials that continued to tout the track capability of the Class Vehicles. Ford's track-heavy marketing campaign included the following messages:



- August 2015 Ford Press Release: "New Six-Speed Shelby GT350 Mustang Manual Transmission Channels Flat-Plane V8 Power via Lighter, Stouter Gearbox," Ex. 44:
  - "Transmission for Shelby GT350 Mustang developed with all-day track capability[.]"
  - "In developing the all-new Shelby GT350—the most potent track-oriented production Mustangs ever—nothing was left on the table in terms of weight reduction and track-capable performance."

- November 2015 Ford Press Release: "Ford Shelby GT350 and GT350R Mustang Named to the Car and Driver 2016 BestList," Ex. 45:
  - "One of the most iconic performance nameplates of all time, the all new Shelby GT350 and GT350R are the most track-capable, street-legal Mustangs ever—all day track cars that can tackle the most challenging roads."



████████████████████████████████████████████████████ Ex. 2 at 329:6-330:23.

Further evidence of Ford's concealment is that Ford continues to organize Track Tour events featuring the Shelbys but is ████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ x. 46.

In contrast to the dozens and dozens of Ford marketing materials touting the track worthiness of all Shelbys, including the Class Vehicles, Ford only prepared *two* documents suggesting that the Base and Technology packages were not ready-made for track day use. Crucially, Ford intended that both of these documents be disseminated *post-delivery* to *existing owners*. *First*, Ford explained on page 25 of the Supplemental Owner's Guide that "[y]our vehicle is capable of sustained high speeds and track day driving if equipped with powertrain coolers (Track, R model) […]  For sustained high speeds or track day use with a Base or Tech model, we recommend that transmission and differential coolers are added.  Your vehicle has electronic controls to reduce power and/or limit RPM to reduce powertrain temperatures if required."  Ex. 47 at 25.  According to Jim Owens, ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████." Ex. 48; Ex. 49.

*Second*, Ford said in "Track Tips" pamphlet that "[w]ith oil coolers for the engine, transmission and differential, the GT350 Track Package and the GT350 R models are best equipped for extended on-track lapping at speed. *The standard GT350 and GT350 Electronic Package certainly can be used on race tracks* but longer runs at high [RPMs] should be avoided." Ex. 50 (emphasis added). ██████████████████████████████████████ ████████████████████████████████████████████████████████ ████████ x. 2 at 328:4-329:3.

Ford's concealment of the Defect was so effective that eve ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

- 17 -

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ Ex. 51 (emphasis added).

**E.      Ford refuses to repair the Defect yet modified the 2017 Shelby models so that they would be track capable.**

Plaintiffs and Class members who have complained about the Defect have been turned away with no remedy,[12] because ██████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ Ex. 53.

███████████████████████████████████████████████

███████████████████████████████████████████████

████ *Id.* ████████████████████████████████████████

████████████████████████████. *See* Ex. 54. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████."

Ex. 55 (emphasis added).

Ford now includes transmission and differential coolers as standard features on *all* 2017 models—a████████████████████████████████████████████

████████████████████████████████. *See*, Ex. 56.

---

[12] Appendix E.

[13] One consumer explained his disappointment as follows: "████████████████████████

███████████████████████████████████████████████

██████████████████████████ Ex. 52.

### F.   Common repairs would render all Shelbys track capable and safe.

Dr. Dahm has identified a set of standard repairs that would cure the Defect in all Class Vehicles and render them suitable for safe use on public roadways and track day driving:



Ex. 8 at Section XVII.

## III.   GENERAL LEGAL STANDARDS

Class actions are an essential tool for adjudicating cases involving multiple claims that involve similar factual and/or legal inquiries and that are too modest to warrant prosecuting individually.  In crafting Rule 23, "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Class actions thus give voice to plaintiffs who "would have no realistic day in court if a class action were not available."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

The party seeking certification has the burden to prove that the class certification prerequisites are met.  *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).  The Court has broad discretion to determine whether the Rule 23 elements are satisfied, yet "Rule 23 is liberally construed in order to meet its objectives[, and] the Court must not exercise its discretion in a manner that would undermine the policies underlying class actions."  *Id.*  While the Rule 23 inquiry may overlap with the merits of the underlying claim, *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013), courts are not to make merits determinations because "[t]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the metho[d] best suited to adjudication of the controversy fairly and efficiently."  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013).

## IV.   THE PROPOSED CLASSES ARE ASCERTAINABLE

Before considering Rule 23 factors, the Court must determine whether the proposed Classes are adequately defined and clearly ascertainable, which means that the members can be ascertained by reference to "objective criteria" that are "administratively feasible."  *Bussey v. Macon Cty. Greyhound Park*, 562 F. App'x 782, 787 (11th Cir. 2014).  Administrative feasibility

- 19 -

"means 'that identifying class members is a manageable process that does not require much, if any, individual inquiry.'" *Id.* (quoting *Newberg on Class Actions*, § 3.3 at 164 (5th ed. 2012)). The proposed Classes meet these standards. The conditions for Class membership are that a person who resides in one of 11 specific states purchased a Ford 2016 Shelby Mustang with a Base or Technology Package Class Vehicle from a Ford-authorized dealer or distributor. These are precise and objective criteria. *See, e.g.*, *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 535-36 (S.D. Fla. 2015) (finding ascertainable a class of persons who bought or leased 2011-15 Ford Explorers during the class period from authorized Ford dealers); *Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 678-79, 685 (S.D. Fla. 2009) (finding ascertainable a class consisting of "every owner or lessee of a 2007 Lexus ES 350 who purchased or leased the vehicle in Florida"). And it is administratively feasible to identify Class members using state vehicle registration data that provides the name and address of the registrant and his or her vehicle identification number.[14] If the Classes are certified, the parties will access this robust data source, and individual inquiries will not be required. Ford can also identify Class members using its own customer lists.[15] Ascertainabilty is clearly demonstrated in this case.

## V. THE PROPOSED CLASSES SATISFY THE REQUIREMENTS OF RULE 23(A)

### A. The members of the Classes are so numerous that joinder is impracticable.

Rule 23(a)(1) requires that the class is so numerous that joinder of all Class members is "impracticable." Joinder need not be impossible; the rule only requires that the difficulty or inconvenience of joining all members make use of the class action appropriate. "[A] numerical yardstick is not the determinant for class certification; rather a court should examine the numbers involved to see if joinder of all is impossible or impracticable." *Hastings-Murtagh v. Texas Air*

---

[14] Vehicle registration data can be purchased from IHS Markit, which obtains registration data from all states and the District of Columbia. *See* https://ihsmarkit.com/products/automotive-market-data-analysis.html. This is a common source for identifying Class members in class actions involving automobiles and where the automaker does not have up-to-date ownership information.



15 ....................................................................................................................................

Ex. 57.

Ex. 58.

*Corp.*, 119 F.R.D. 450, 459 (S.D. Fla. 1988). A reasonable estimate (and not precision) is all that is required, and more than 40 members generally suffices. *Rosen*, 270 F.R.D. at 680; *see also CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992) (class of 500 persons).

Each Class satisfies the numerosity requirement.



Ex. 63; Ex. 59.

.[16] Ex. 60 at Tab 7.

## B. Numerous common issues exist because the focus is on Ford's common course of conduct.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. The "commonality" requirement of Rule 23(a)(2) "is a 'low hurdle' easily surmounted." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (citations omitted). A single common question suffices. *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016). Where the defendant is alleged to have "engaged in a standardized course of conduct that affects all class members," commonality is satisfied. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 685-86 (S.D. Fla. 2004). And "Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality." *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 604 (S.D. Fla. 2003).

Plaintiffs satisfy the relatively low commonality hurdle. Within each Class, the claims of all members involve the *same* common overheating Defect. Additional common issues include: whether Ford was aware of and concealed the Defect; whether Ford's omissions were material; whether Ford violated consumer protection statutes, engaged in fraudulent concealment, was unjustly enriched, and breached implied warranties; whether Ford's law violations harmed Plaintiffs and the members of the Classes; and the relief, if any, to which Plaintiffs and the Classes are entitled. Proof of Ford's knowledge of the defect, for example, will focus solely on Ford's conduct and will necessarily be common—indeed, *identical*—for each member of each Class.

---

[16] ████████████████████████████ Ex. 60 at Tab 7. Nevertheless, numerosity can still be met for this state class because districts courts are free to "make a subjective determination that joinder is impracticable based on considerations of expediency and the inconvenience of trying individual suits." *Pottinger v. City of Miami*, 720 F. Supp. 955, 958 (S.D. Fla. 1989). Further, "[n]o specific number and no precise count is needed to sustain the numerosity requirement," and "[s]everal courts have granted class certification for as few as twenty five members." *Id*. (internal citations omitted).

These are classic examples of questions found to satisfy commonality in auto defect class actions. *See, e.g.*, *Wolin v. Jaguar Land Rover N. Am.*, *LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005); *Motley v. Jaguar Land Rover N. Am.*, *LLC*, 2012 WL 5860477, at *11 (Conn. Super. Ct. Nov. 1, 2012); *see also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) (whether alleged design defect caused damage is a common issue for all members of the class).

## C.  Plaintiffs' claims are typical of those of the Classes because the claims arise from a common course of conduct and are pled under common legal theories.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This "typicality" requirement is met when the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class members, and where the claims are based upon similar legal theories and are not antagonistic to those of the class. *Pottinger v. City of Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989). Typicality and commonality are related, with commonality referring to the group characteristics of the class as a whole, and typicality focusing on the named plaintiffs' claims in relation to the class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000).

Like commonality, the typicality test is not demanding. *Rosen*, 270 F.R.D. at 682. Typicality does not require identical claims or defenses, and a "factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (strong similarity is sufficient for typicality, even where factual differences exist). Indeed, any alleged atypicality between the named plaintiffs' claims and those of the class "must be clear and must be such that the interests of the class are placed in significant jeopardy." *Walco Invs.*, 168 F.R.D. at 326. Nor do variations in the amount of damages vitiate typicality. *Kornberg*, 741 F.2d at 1337; *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 687.

Typicality is readily satisfied in cases like this one, where Plaintiffs' claims arise from a common course of conduct and common legal theories: Ford engaged in unfair and deceptive conduct in violation of consumer protection laws, committed fraudulent concealment, was unjustly enriched, and breached implied warranties by selling vehicles with a known (to Ford), concealed

overheating Defect.  Further, Plaintiffs' vehicles have the same Defect as all other vehicles in the particular Class for which Plaintiffs are proposed representatives.  Because each Class member's claims arise from the same course of Ford's conduct, and each Class member makes similar (if not identical) legal arguments to prove Ford's liability, the typicality requirement is satisfied—as courts commonly find in auto defect cases.  *See*, *e.g.*, *Wolin*, 617 F.3d at 1175; *Daffin*, 458 F.3d at 552-53; *Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 599 (3d Cir. 2012); *Motley*, 2012 WL 5860477, at *15.

**D.      Plaintiffs and their counsel will adequately represent the interests of the Classes.**

Rule 23(a)(4) requires that the representative parties will "fairly and adequately protect the interests of the class."  This requirement is satisfied when (i) the Plaintiffs have no interests conflicting with the class;[17] and (ii) the representatives and their attorneys will properly prosecute the case.  *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Valley Drug*, 350 F.3d at 1189.  Adequacy is satisfied here.  *First*, there are no potential intra-class conflicts and no hint of antagonism between the claims of the proposed Plaintiffs and the members of the proposed Classes.  Plaintiffs are members of the Classes they seek to represent, suffer from the same vehicle Defect as the other Class members, and assert the same claim for damages.  *See Pottinger*, 720 F. Supp. at 959 (adequacy exists where the named plaintiffs share common interests with the Class members and seek the same type of relief for themselves as they seek for the class).  All Plaintiffs seek to hold Ford responsible for its legal violations.  As Plaintiffs prove their own claims, they also will be proving the claims of the absent Class members.  Plaintiffs thus "share the true interests of the class."  *Hastings-Murtagh*, 119 F.R.D. at 459; *see also Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the "common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members").

*Second*, Plaintiffs have been and are committed to vigorously prosecuting this litigation and will endeavor to obtain the largest recovery for the Classes consistent with good faith and

---

[17] The existence of minor conflicts of interest between the plaintiffs and the class "alone will not defeat a party's claim to class certification:  the conflict must be a 'fundamental' one going to the specific issues in controversy."  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).  A fundamental conflict exists where the economic interests and objectives of the Plaintiffs "differ significantly from the economic interests and objectives of unnamed class members," such as when other members of the class actually benefitted from the conduct challenged by the plaintiffs.  *Id.* at 1189-90.  Ford cannot show that any fundamental conflict exists here.

sound judgment.   In addition to monitoring the litigation, Plaintiffs have already devoted substantial time producing documentary discovery, responding to discovery requests, sitting and sometimes traveling for lengthy depositions, presenting their vehicles for inspections by Ford upon request, and retaining class counsel—all in the interests of each Class.  *See* Exs. 83-104.

*Third*, proposed Class Counsel are qualified to represent the Classes.  *Brown*, 212 F.R.D. at 605.  Both law firms include very qualified lawyers experienced in the successful prosecution of consumer class actions, and they have collectively recovered billions-of-dollars for class members in other litigation.  To support the determinations required under Fed. R. Civ. P. 23(a)(4) and 23(g), each firm provides a firm résumé setting forth its experience and expertise in class actions.  *See* Exs. 61 and 62.  Counsel have already expended thousands of hours of work toward the prosecution of this case and are prepared to efficiently and aggressively proceed with the case until its conclusion.

## VI.   THE COURT SHOULD CERTIFY THE CLASSES UNDER RULE 23(B)(3)

Certification is warranted under Rule 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### A.   Common issues of fact and law predominate because legal and factual questions will be resolved with proof common to all Plaintiffs and Class members.

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'"  *Carriuolo*, 823 F.3d at 985 (quoting *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009)); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (common question "is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized class-wide proof'") (quoting 2 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:50, at 196-97 (5th ed. 2012)).  It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (the rule "calls only for predominance, not exclusivity, of common questions").  Courts consider the cause of action and "what value the resolution of the class-wide issue will have in

- 24 -

each member's underlying cause of action." *Rosen*, 270 F.R.D. at 681 (quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000)).  The predominance inquiry seeks to determine the evidentiary effect of adding plaintiffs to the class.  If adding more plaintiffs introduces "significant amounts of new evidence," this suggests that individual issues are important.  Conversely, if adding more plaintiffs leaves the amount of evidence needed to prove the claims "relatively undisturbed," common issues likely predominate.  *Klay*, 382 F.3d at 1255.  Common issues predominate in consumer class actions where, as here, the defendant exhibits a common course of conduct.  *See, e.g.*, *Amchem Prods.*, 521 U.S. at 625 ("[p]redominance is a test readily met in certain cases alleging consumer . . . fraud").

Common issues will predominate in the trial of Plaintiffs' claims.  The key evidence necessary to establish those claims is common to Plaintiffs and all members of the Classes—they all seek to prove, among other things, that the Class Vehicles have a common overheating Defect and that Ford's conduct was uniformly wrongful.  The evidence changes little if there are 100 Class members or millions:  either way, Plaintiffs would, for instance, present the *same* evidence that the overheating Defect exists; that Ford was aware of the Defect and concealed it; and that Ford caused economic loss to Plaintiffs and the members of the Classes.  In the words of the Eleventh Circuit, the foregoing evidence has a direct impact on every Class member's effort to establish liability and on every Class member's entitlement to relief.  *Klay*, 382 F.3d at 1255.  And these common issues "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 136 S. Ct. at 1045.

Courts often find that common issues predominate in auto defect class actions.  *See, e.g.*, *Carriuolo*, 823 F.3d at 989 (predominating common issues included whether GM inaccurately communicated vehicle safety ratings "allow[ing] it to command a price premium"); *Rosen*, 270 F.R.D. at 681-82 (the "critical issue of whether the [airbag system] was defective is common to all putative class members" and "predominates over the individual issues"); *Sanchez-Knutson*, 310 F.R.D. at 538 (common issues predominate where evidence presented that systemic problem results from defect); *Daffin*, 458 F.3d at 554; *Wolin*, 617 F.3d at 1173 (common issues predominate such as whether Land Rover was aware of and had a duty to disclose the defect and violated consumer protection laws); *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 532-34 (C.D. Cal. 2012) (predominance found based on common evidence of the nature of the defect, the defect's impact on vehicle safety, Honda's knowledge, and what Honda disclosed to consumers);

- 25 -

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 596-97 (C.D. Cal. 2008) (predominating common issues included defendant's knowledge of the alleged defect, whether it had a duty to disclose and did so, whether the alleged failure to disclose was material to a reasonable consumer; and whether the conduct violated California consumer protection statutes); *Chamberlan v. Ford Motor Co.*, 223 F.R.D. 524, 526 (N.D. Cal. 2004) (common questions predominate such as "whether the design of the plastic intake manifold was defective, whether Ford was aware of the alleged design defects, whether Ford had a duty to disclose its knowledge, whether it failed to do so, whether the facts that Ford allegedly failed to disclose were material, and whether the alleged failure to disclose violated the CLRA"), *petition denied*, 402 F.3d 952 (9th Cir. 2005).

### 1. Common questions of law predominate for Plaintiffs' consumer protection act claims.

With the following common evidence, Plaintiffs will prove that Ford violated 10 relevant consumer acts prohibiting omissions and unfair and deceptive and unconscionable conduct: (i) Class Vehicles suffer from the same Defect; (ii) Ford was aware of the alleged Defect; (iii) Ford had a duty to disclose its knowledge but failed to do so; and (iv) the facts that Ford allegedly failed to disclose were material. **CA**–CAL. BUS. & PROF. CODE § 17200 (prohibiting "unlawful, unfair or fraudulent" business practices); CAL. CIV. CODE § 1770(a) (prohibiting "unfair or deceptive acts"); **FL**–FLA. STAT. § 501.204(1) (prohibiting "[u]nconscionable . . . and unfair or deceptive acts"); **IL**–815 ILL. COMP. STAT. 505/2 (prohibiting "unfair or deceptive acts or practices" and "concealment, suppression or omission of any material fact"); **MO**–MO. REV. STAT. § 407.020(1) (prohibiting "any deception [or] unfair practice"); **NJ**–N.J. STAT. § 56:8-2 (prohibiting "deception" and "unconscionable" practices and "concealment, suppression, or omission of any material fact"); **NY**–N.Y. GEN. BUS. LAW § 349(a) (prohibiting "[d]eceptive acts or practices"); **PA**–3 PENN. STAT. § 201-2(4)(xxi) (prohibiting "fraudulent or deceptive conduct"); **TN**–TENN. CODE ANN. § 47-18-104 (prohibiting "[u]nfair or deceptive acts or practices"); **TX**–TEX. BUS. & COM. CODE § 17.45(5) (prohibiting an "unconscionable action or course of action"); **WA**–WASH. REV. CODE § 19.86.020 (prohibiting "unfair or deceptive acts or practices").[18]

None of the statutes requires an individualized showing of reliance for material omissions claims; rather, courts apply an objective materiality test to determine whether the practice was

---

[18] Plaintiffs do not seek to certify a consumer protection act claim in Oregon, where only affirmative misrepresentations are actionable under the relevant statute.

likely to deceive a consumer acting reasonably. **CA**–*Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (presumption of reliance under UCL and CLRA when omission is material); *Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015) ("Because materiality is governed by an objective 'reasonable person' standard under California law, an inquiry that is the same for every class member, a finding that the defendant has failed to disclose information that would have been material to a reasonable person who purchased the defendant's product gives rise to a rebuttable inference of reliance as to the class."); *Bautista v. Valero Mktg. & Supply Co.*, 322 F.R.D. 509, 512, 515 (N.D. Cal. 2017) (certifying CLRA, FAL, and UCL claims; plaintiff "need only show that [defendant] produced marketing materials with a material omission that could mislead a significant portion of the general consuming public"); **FL**–*Carriuolo*, 823 F.3d at 985 ("A party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue."); **IL**–*Cannon v. Nationwide Acceptance Corp.*, 1997 U.S. Dist. LEXIS 20019, at *11 (N.D. Ill. Dec. 9, 1997) ("Individual reliance need not be shown for claims brought under . . . the Illinois Consumer Fraud Act."); **MO**–*Hughes v. The Ester C Co.*, 317 F.R.D. 333, 351 (E.D.N.Y. 2016) (like under the California's UCL, FAL, and CLRA, reliance could be inferred upon objective showing of materiality); **NJ**–*Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) ("[a] practice can be unlawful even if no person was in fact misled or deceived thereby […] [t]he capacity to mislead is the prime ingredient"); **NY**–*Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *2 (E.D.N.Y. July 18, 2013) (Section 349 of New York's General Business Law "use[s] an objective reasonable consumer standard for reliance"); **PA**–*Greene v. Sears Prot. Co.*, 2018 WL 3104300, at *8 (N.D. Ill. June 25, 2018) (justifiable reliance [under the UTPCPL] may be shown by common proof when the purported fraud is based on alleged conduct that was uniform as to all class members); **TN**–*SecurAmerica Bus. Credit v. Schledwitz*, 2014 Tenn. App. LEXIS 178, at *71 (Tenn. Ct. App. Mar. 28, 2014) ("[I]n TCPA cases involving misrepresentation, a plaintiff is not required to show reliance upon a misrepresentation in order to maintain a cause of action[.]") (quotations, citation omitted); **TX**–*Dzielak v. Whirlpool Corp.*, 2017 U.S. Dist. LEXIS 209106 (D.N.J. Dec. 20, 2017) (certifying class alleging they were overcharged a "price premium" because of defendant's allegedly deceptive "Energy Star label" under multiple state statutes including Texas DTPA); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1018 (C.D. Cal. 2015) ("[P]laintiffs' Texas consumer protection claim may be susceptible of classwide proof if plaintiffs can show the materiality of . . . representation on a classwide basis."),

- 27 -

*aff'd*, 844 F.3d 1121 (9th Cir. 2017); **WA**–*Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1268 (W.D. Wash. 2009) (for Washington CPA claims, "Washington courts do not require a plaintiff to allege individual reliance on Defendants' conduct, particularly where the non-disclosure of a material fact is alleged.").  Common evidence—including Ford's own marketing documents and internal admissions about the materiality of the track ready messaging—overwhelmingly and objectively demonstrate the materiality to Plaintiffs and the Classes of purchasing track ready vehicles that were not track capable.[19]

And each statute utilizes objective (rather than subjective) standards for deception.  **CA**–*Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (under the "'reasonable consumer' test . . . Plaintiff must 'show that members of the public are likely to be deceived[]' [which] requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'"); **FL**–*Carriuolo*, 823 F.3d at 984 ("Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably."); **IL**–*Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) ("Under the CFA, a statement is deceptive if it creates a likelihood of deception or has the capacity to deceive."); **MO**–MO. CODE REGS. tit. 15, § 60-9.020(1) ("Deception" is "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression."); MO. CODE REGS. tit. 15, § 60-9.020(2) ("Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable mental state such as recklessness or negligence, are not elements of deception . . . ."); **NJ**–*Sauro v. L.A. Fitness Int'l, LLC*, 2013 WL 978807, at *5 (D.N.J. Feb. 13, 2013) ("For an alleged deceptive act to be actionable, courts consider whether the act has the capacity to mislead the average consumer."); **NY**–*Food Parade, Inc. v. Office of Consumer Affairs of Cty. of Nassau*, 859 N.E.2d 473 (N.Y. 2006) ("[T]his Court has applied an objective standard which asks whether the 'representation or omission [was] likely to mislead a reasonable consumer acting

---

[19] Plaintiffs will also rely on the conclusions of their marketing expert, Dr. Elisabeth Honka, to demonstrate that ▮▮▮▮▮▮ ▮ ▮▮▮▮ Ex. 7 at 39-44.  *Id.* at 15-20.

reasonably under the circumstances,' taking into account not only the impact on the 'average customer' but also on 'the vast multitude which the statutes were enacted to safeguard—including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions.'") (citations omitted); **PA**–*Commonwealth ex rel. Zimmerman v. Nickel*, 26 Pa. D. & C.3d 115, 120 (Pa. D. & C. 1983) ("An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive."); **TN**–*Fayne v. Vincent*, 301 S.W.3d 162, 177 (Tenn. 2009) ("A deceptive act or practice is, in essence, 'a material representation, practice or omission likely to mislead . . . reasonable consumer[s]' to their detriment."); **TX**–*Daugherty v. Jacobs*, 187 S.W.3d 607, 614 (Tex. Ct. App. 2006) ("Generally, an act is false, misleading, or deceptive if it has the capacity to deceive an average or ordinary person, even though that person may have been ignorant, unthinking, or credulous."); *Hulcher Servs. v. Emmert Indus. Corp.*, 2016 Tex. App. LEXIS 928, at *65 (Tex. Ct. App. Jan. 28, 2016) ("Unconscionability is an objective standard."); **WA**–*Peterson v. Kitsap Cmty. Fed. Credit Union*, 287 P.3d 27, 37-38 (Wash. 2012) ("To show that a party has engaged in an unfair or deceptive act or practice that violates the CPA, a plaintiff need not prove that the act in question was 'intended to deceive, but that the alleged act had the capacity to deceive a substantial portion of the public.'").

**2.    Common questions of law predominate for Plaintiffs' fraudulent concealment claims.**

Plaintiffs will prove fraudulent concealment with the same common evidence used to prove Ford's violations of consumer statutes, namely (i) Class Vehicles suffer from the same Defect; (ii) Ford was aware of the alleged Defect; (iii) Ford had a duty to disclose its knowledge but failed to do so;[20] and (iv) the facts that Ford allegedly failed to disclose were material.  *See*, *e.g.*, *In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189-90 (C.D. Cal. 2010).  The elements of fraudulent concealment are very similar by state and will be proved via common evidence.[21]  **CA**–(1) concealment or suppression of a material fact by a defendant; (2) the defendant intended to defraud the plaintiff by intentionally and actively concealing or suppressing the fact; (3) the plaintiff was unaware of the fact and would not have

---

[20] As discussed in Section VI.B.2 below, a duty to disclose arises either as a result of Ford's exclusive or superior knowledge of the Defect or Ford's dissemination of the track capable misrepresentations.

[21] Plaintiffs do not seek to certify a fraudulent concealment class in Texas because of that state's uniquely onerous requirements.

acted as he or she did if he or she had known of the concealed or suppressed fact; and (4) plaintiff sustained damage as a result of the concealment or suppression of the fact. *Dent v. NFL*, 902 F.3d 1109, 1125 (9th Cir. 2018); **FL**–(1) the defendant actively concealed a material fact; (2) the defendant knew or should have known the material fact should be disclosed; (3) the defendant knew that its active concealment of the material fact would induce the plaintiff to act; and (4) the plaintiff detrimentally relied on the misinformation. *Hess v. Philip Morris USA, Inc*., 175 So. 3d 687, 691 (Fla. 2015); **IL**–(1) the defendant actively concealed a material fact; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. *Abazari v. Rosalind Franklin Univ. of Med. & Sci*., 40 N.E.3d 264, 274 (Ill. Ct. App. 2015); **MO**–(1) active concealment of a material fact; (2) intent of the non-speaker that the decedent would act on the concealment; (3) the decedent's ignorance of the facts being concealed; (4) reliance; (5) the decedent's right to rely; and (6) proximately-caused injury. *Thompson v. R.J. Reynolds Tobacco Co*., 2013 WL 12075969, at *3 (W.D. Mo. May 3, 2013) (citing *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007)), *aff'd*, 760 F.3d 913 (8th Cir. 2014); **NJ**–(1) the defendant actively concealed information from the plaintiff; (2) the information was material; (3) the plaintiff could not readily have learned of the information without the defendant disclosing it; (4) the defendant intentionally and actively withheld, altered, or destroyed the information; and (5) the plaintiff suffered harm by relying on the non-disclosure. *Steele v. Depuy Orthopaedics, Inc*., 295 F. Supp. 2d 439, 456 (D.N.J. 2003); **NY**–(1) active concealment of material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) scienter; (4) reliance; and (5) damages. *Oden v. Boston Sci. Corp*., 330 F. Supp. 3d 877, 898 (E.D.N.Y. 2018); **OR**–(1) active concealment of a material fact; (2) the fact's materiality; (3) the speaker's knowledge of its falsity or ignorance of its truth; (4) his intent that it should be acted on by the person and in the manner reasonably contemplated; (5) the hearer's ignorance of its falsity; (6) his reliance on its truth; (7) his right to rely thereon; and (8) his consequent and proximate injury. *Unigestion Holding, S.A. v. UPM Tech., Inc*., 160 F. Supp. 3d 1214, 1223–24 (D. Or. 2016); **PA**–(1) actively concealing from another a fact that defendant knows may justifiably induce the other to act or refrain from acting in a business

transaction; (2) which is material to the transaction at hand; (3) with the intent of misleading another into relying on it; (4) justifiable reliance; and (5) the resulting injury was proximately caused by the reliance. *LEM 2Q, LLC v. Guar. Nat'l Title Co*., 144 A.3d 174, 181 & n.11 (Pa. Super. Ct. 2016) (citing RESTATEMENT (SECOND) OF TORTS § 551); **TN–**(1) the defendant actively concealed or suppressed a material fact; (2) the defendant intentionally and actively concealed or suppressed the fact with the intent to deceive the plaintiff; (3) the plaintiff was not aware of the fact and would have acted differently if the plaintiff knew of the actively concealed or suppressed fact; and (4) as a result of the active concealment or suppression of the fact, the plaintiff sustained damage. TENN. PATTERN INST. CIVIL § 8.38; *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992); **WA–**(1) active concealment of a fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff. *Adams v. King Cty*., 192 P.3d 891, 902 (Wash. 2008).

A duty to disclose exists when a representation is misleading by omission, and class-wide proof of reliance is presumed when the omission is material. **CA–***Boeken v. Philip Morris, Inc.,* 127 Cal. App. 4th 1640, 1660 (Cal. Ct. App. 2005) (duty to disclose information arises upon the utterances of the half-truths); *Lucas v. Breg, Inc.*, 212 F. Supp. 3d 950, 969 (S.D. Cal. 2016) (under California law, reliance inferred on a class-wide basis when the same material misrepresentations or omissions have been actually communicated to each member of a class); *Daniel*, 806 F.3d at 1225 (presumption or inference of reliance from circumstantial evidence); **FL–***Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1106 n.6 (11th Cir. 2018) (inference of reliance from circumstantial evidence); **IL–***Steinberg v. Chicago Med. Sch.*, 371 N.E.2d 634 (Ill. 1977) (same); **MO–***Gurley v. Montgomery First Nat'l Bank, N.A.*, 160 S.W.3d 863, 868 (Mo. Ct. App. 2005) (same); **NJ–***In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 74–75 (D.N.J. 2009) (same), *clarified*, 267 F.R.D. 113 (D.N.J. 2010), *modified on reconsideration*, 2010 WL 2976496 (D.N.J. July 22, 2010); **NY–***Weinberg v. Hertz Corp.*, 499 N.Y.S.2d 693, 696 (N.Y. App. Div. 1986) (presumption or inference of reliance from circumstantial evidence), *aff'd*, 509 N.E.2d 347 (N.Y. 1987); **OR–***Strawn v. Farmers Ins. Co. of Or.*, 258 P.3d 1199, 1213, 1215 (Or. 2011) (inference of reliance from circumstantial evidence); **PA–***Commonwealth v. Ortho-McNeil-Janssen Pharms., Inc.*, 52 A.3d 498, 510-11 (Pa. Commw. Ct. 2012) (presumption of reliance); **TN–***Bridgestone Am.'s, Inc. v. IBM*, 172 F. Supp. 3d 1007, 1018 (M.D. Tenn. 2016) ("a seller

must disclose enough information to prevent its statements from being misleading"); *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 312 (Tenn. 2008) (common law fraud claims may be certified as a class action if the "misrepresentations were uniform"); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) (inference of reliance from circumstantial evidence); **WA**–*Gilliland v. Mt. Vernon Hotel Co.*, 321 P.2d 558, 561 (Wash. 1958) ("When one is asked for information, he may decline, but if answer is undertaken, he must tell the whole truth."); *Deegan v. Windermere Real Estate/Center-Isle, Inc.*, 391 P.3d 582, 588 (Wash. Ct. App. 2017) ("[R]eliance is 'virtually impossible to prove' in cases involving nondisclosure of material facts" and "Washington courts have adopted a rebuttable presumption of reliance for omissions of material fact in franchise fraud and securities fraud cases[.]") (footnotes and citations omitted).

**3. Common questions of law predominate for Plaintiffs' breach of implied warranty claims.**

Breach of implied warranty is defined by each relevant state as failing to provide a product that "pass[es] without objection in the trade" or is "fit for the ordinary purposes for which such goods are used." *Tershakovec v. Ford Motor Co.*, 2018 U.S. Dist. LEXIS 116130, at \*29 (S.D. Fla. 2018); *see also* **CA**–CAL. COM. CODE § 2314(2); **MO**–MO. REV. STAT. § 400.2-314(2); **NJ**– N.J. STAT. § 12A:2-314; **PA**–13 PA.C.S. § 2314(b); **TX**–TEX. BUS. & COM. CODE § 2.314. Each of the five relevant jurisdictions has adopted UCC § 2-314 and generally requires the same elements for breach of the implied warranty of merchantability: (i) defendant is a manufacturer or seller of the product; (ii) the plaintiff is a foreseeable user of the product; (iii) the product was unmerchantable or unfit for its ordinary use at the time the product left the defendant's possession; (iv) the breach caused plaintiff to suffer damages and lose money; and (v) the defendant received notice within reasonable time of plaintiff's damage or loss. **CA**–*Isip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 26-27 (Cal. Ct. App. 2007); **MO**–*Ragland Mills, Inc. v. Gen. Motors, Corp.*, 763 S.W.2d 357, 360 (Mo. Ct. App. 1989); **NJ**–NEW JERSEY JURY INSTR. CIV. 4.22B; **PA**–*Visual Commc'ns, Inc. v. Konica Minolta Bus. Sols. U.S.A., Inc.*, 611 F. Supp. 2d 465, 470 (E.D. Pa. 2009); **TX**–*Bass v. Stryker Corp.*, 669 F.3d 501, 516 (5th Cir. 2012). The central inquiry is whether the product was defective at the time it was sold. *See, e.g.*, *Cholakyan v. Mercedes- Benz USA, LLC*, 796 F. Supp. 2d 1220, 1243 (C.D. Cal. 2011).

As above, Class-wide evidence of the Defect and Ford's misconduct will prove that the Class Vehicles were not merchantable at the time they left Ford's possession. Courts have certified implied warranty classes where automotive products are alleged to have been "defective in the

same way." *See*, *e.g.*, *Rosen*, 270 F.R.D. 675 (certifying class of Florida vehicle owners and lessees against manufacturer on breach of implied warranties, *inter alia*, for failure to disclose vehicle defect); *In re MyFord Touch Consumer Litig.*, 2016 WL 7734558, at *25 (N.D. Cal. Sept. 14, 2016), *on reconsideration in part*, 2016 WL 6873453 (N.D. Cal. Nov. 22, 2016); *see also McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 552 (5th Cir. 2003) (approving certified Texas class for implied warranty claim because existence of defect would not vary from plaintiff to plaintiff: because "the inquiry is focused on the time the goods left the manufacturer's or seller's possession") (quotation and citation omitted).

### 4. Common questions of law predominate for Plaintiffs' unjust enrichment claims.

The Court has already recognized that the law of unjust enrichment is largely uniform. *Tershakovec*, 2018 U.S. Dist. LEXIS 116130, at *43. Most states have adopted a variation of the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION § 1, which provides that a party may be required to make restitution if she is unjustly enriched at the expense of another. Other states add one or more elements. As above, Class-wide evidence of Ford's misconduct will prove that Ford was unjustly enriched under the law in the relevant states. **CA**–*Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 852 (N.D. Cal. 2012) (receipt of a benefit and unjust retention of the benefit at the expense of another); **FL**–*Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013) ((1) a benefit conferred upon the defendant by the plaintiff; (2) the appreciation by the defendant of such benefit; and (3) acceptance and retention of such benefit by the defendant under such circumstances that it would be inequitable for him to retain it without paying the value thereof); **IL**–*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989) (defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience); **MO**–*Gerke v. City of Kansas City*, 493 S.W.3d 433, 438 (Mo. Ct. App. 2016) ((1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; (3) that it would be unjust to allow the defendant to retain the benefit); *S & J, Inc. v. McLoud & Co., L.L.C.*, 108 S.W.3d 765, 768 (Mo. Ct. App. 2003) (there must be something more than passive acquiescence, such as fault or undue advantage on part of defendant, for defendant's retention of benefit to be unjust); **NJ**–*Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 330 (D.N.J. 2014) ((1) at plaintiffs expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it); *Nat'l*

*Amusements, Inc. v. New Jersey Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992) (available only when there is no adequate remedy at law), *aff'd*, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994); **NY**–*Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104 (N.Y. 2011) ((i) the defendant was enriched, (ii) at the plaintiff's expense, and (iii) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered); *Bennett v. John*, 151 A.D.2d 711 (N.Y. App. Div. 1989) (no adequate remedy of law required); **OR**–*Unigestion Holding, S.A. v. UPM Tech., Inc*., 160 F. Supp. 3d 1214, 1230 (D. Or. 2016) ((1) a benefit conferred, (2) awareness by the recipient that he or she has received the benefit, and (3) that it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it); **PA**– *Whitaker v. Herr Foods, Inc*., 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016) ((1) plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit and accepted or retained it, and (3) it would be inequitable to allow the defendant to keep the benefit without paying for it); **TN**–*City of Goodlettsville, TN v. Priceline.com, Inc*., 605 F. Supp. 2d 982, 998 (M.D. Tenn. 2009) ((1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof); **TX**–*Villareal v. Grant Geophysical, Inc*., 136 S.W.3d 265, 270 (Tex. Ct. App. 2004) (wrongfully securing a benefit that would be unconscionable to retain); **WA**–*Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value).

Courts find that common questions predominate for unjust enrichment claims where, as here, defendant's conduct was the same as to all Class members. *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 925 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 143 (2018); *In re Checking Account Overdraft Litig.*, 286 F.R.D. 645, 657-58 (S.D. Fla. 2012).

**B.      Applying multi-state law does not preclude predominance.**

The scope of certification is at the broad discretion of the Court, and the Court has three certification choices. *First*, the Court may certify each Class under the law of a single state. *See*, *e.g.*, *Rikos v. P&G*, 799 F.3d 497, 504 (6th Cir. 2015) (five separate state classes certified, one each for California, Illinois, Florida, New Hampshire, and North Carolina).

- 34 -

*Second*, the Court may choose to certify bellwether classes for a limited number of states (or claims) and direct the parties to proceed to trial on just those more limited classes—with the bellwether trial process instructing the decision to certify and try the claims of additional classes (or, alternatively, informing the resolution of any remaining claims).  *See, e.g.*, *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 86-87 (D. Mass. 2008) (describing use of single-state, bellwether class certification and trial procedure that preceded later decision of whether to certify multi-state classes); *cf.* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (4th ed. 2004) ("MANUAL") (bellwether test cases "should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis[,] and what range of values the cases may have if resolution is attempted on a group basis.").  Such a process is currently being employed by Judge Furman in *In re GM LLC Ignition Switch Litig.*, 14-MD-2543, 14-MC-2543 (S.D.N.Y.) (three states), and was used in *In re Toyota Motor Corp. Unintended Accel. Mktg., Sales Practices & Prods. Liab. Litig.*, 8:10-ml-02151 (C.D. Cal.) (three states). Should the Court exercise its discretion to choose bellwether classes, Plaintiffs recommend California, Florida, and Missouri.

*Third*, the Court can choose to simplify trial by certifying several groups of multi-state classes segregated by claim.  Courts certify multi-state classes when "applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards . . . ." *Klay*, 382 F.3d at 1262;[22] *see also In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 674 (S.D. Fla. 2015) (certifying claims under the laws of many states and citing other authorities); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679-80 (S.D. Fla. 2011) (multi-state class certification proper even if "different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of" sub-classing); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (variations in state law do not automatically preclude class certification); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 315 (3d Cir.

---

[22] In *Klay*, although the Eleventh Circuit reversed this Court's decision to certify breach of contract and unjust enrichment claims, the Court recognized that state law claims "based on a principle of law that is uniform among the states" can form a "realistic possibility" of certification. *Id.*

- 35 -

1998) ("[c]ourts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."); *Steigerwald v. BHH, LLC*, 2016 WL 695424, at *9 (N.D. Ohio Feb. 22, 2016) (certifying express warranty and fraud claims under laws of 10 states); *In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, 2013 WL 4759649 at *9 (D. Mass. 2013) (certifying 26 classes under laws of 26 states).

The Court need not find complete uniformity of state law, only that there are no material conflicts among the laws such that they can be divided into a manageable number of sub-groups. *See Simon v. Philip Morris*, 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000); American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b) (2010) ("court may authorize aggregate treatment of multiple claims . . . if the court determines that . . .  different claims or issues are subject to different bodies of law that are the same in functional content [or] different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of identified adjudicatory procedures").

Common issues of law and fact will remain the predominant focus of this litigation should the Court choose to group state laws and certify multi-state classes segregated by claim.  The extensive analysis below demonstrates how variations in law are minimal, and that applying the laws of several states to Plaintiffs' claims does not vitiate manageability.  In those few instances where variations are material, Plaintiffs show how the Court can group state laws to certify discrete classes or subclasses with adequate representatives.  *See* Fed. R. Civ. P. 23(c) (5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); MANUAL §§ 21.23, 22.754  (subclasses can be used to account for differences in state law).

### 1.    Consumer protection act grouping.

As demonstrated above in Section VI.A.1., 10 jurisdictions can be grouped into three classes corresponding to common prohibitions: (i) the Unfair and Deceptive Conduct Consumer Protection Class to pursue claims under state statutes that generally prohibit unfair and deceptive conduct (California, Florida, Illinois, Missouri, New Jersey, New York, Pennsylvania, Tennessee, and Washington); (ii) the Omissions Consumer Protection Class to prosecute claims under consumer statutes that prohibit omissions of material fact (Illinois and New Jersey); and (iii) the Unconscionable Acts or Practices Consumer Protection Class to remedy Ford's unconscionable

conduct (New Jersey and Texas).  Also as demonstrated above in Section VI.A.1., each of the 10 jurisdictions in the Consumer Protection Classes utilizes objective (rather than subjective) standards for deception and does not require individual reliance.  As further evidence demonstrating the manageability of applying multi-state consumer protection law, Plaintiffs provide proposed Special Verdict Forms that capture the salient elements of each claim.  *See* Appendices F-I.  Jury instructions will elucidate commonly defined terms and otherwise guide the fact-finder through the required elements.  As the forms demonstrate, any differences that exist among state laws can easily be taken in to account, thus ensuring careful adherence to legal requirements and eliminating any manageability issues.

Courts commonly certify multi-state classes applying unfair and deceptive trade practices act claims.  *See, e.g., Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) (holding that "the idiosyncratic differences between state consumer protection laws [were] not sufficiently substantive to predominate over the shared claims"); *Suchanek v. Sturm Foods, Inc.*, 2018 WL 6617106, at *13 (S.D. Ill. July 3, 2018) (certifying class under consumer protection statutes of five states); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 4459636 (N.D. Ohio July 21, 2015) (certifying consumer protection and unfair competition claims under laws of 15 states); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010), *amended*, 2011 WL 3268649 (N.D. Cal. July 28, 2011) (certifying class under antitrust, consumer protection, and unfair competition laws of 24 states); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. at 108-09 (certifying classes under consumer protection laws of 27 jurisdictions); *cf. In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 518 (E.D. Mich. 2003) (characterizing consumer protection claims in various states as "substantially similar" for settlement class).

**2.     Fraudulent concealment grouping.**

Plaintiffs' fraudulent concealment claims can be grouped into two Classes.  The Fraudulent Concealment Exclusive or Superior Knowledge Class includes consumers in states with claims that share common elements and require, among other things, a duty to disclose based on exclusive knowledge or a superior level of knowledge by the defendant in the absence of active concealment.[23]    These states are California, Illinois, Missouri, New York, Pennsylvania,

---

[23] The general overlapping elements are: (i) material omission by the defendant of a presently existing or past fact; (ii) knowledge or belief by the defendant of its falsity or concealment; (iii) an intention that the other person rely on it; (iv) justifiable reliance thereon by the other person; (v)

Tennessee, and Washington.  *See* Section VI.A.2, *supra.*  This class includes two subclasses for states that require, respectively, reasonable reliance (instead of justifiable reliance) (Washington[24]) and proof by a preponderance of the evidence (instead of clear and convincing evidence) (California and Tennessee[25]).

The Fraudulent Concealment Partial Disclosure Class includes consumers in states with claims that share common elements and require, among other things, a duty to disclose based on having made a partial and false disclosure to each Class member that the Class Vehicles were track capable.[26]   These states are Florida, New Jersey, and Oregon.  *See* Section VI.A.2, *supra.*  As in the first fraudulent concealment class, two subclasses are proposed for states that require, respectively, reasonable reliance (New Jersey[27]) and proof by a preponderance (Florida[28]).

Manageability is further demonstrated by Plaintiffs' proposed Special Verdict Forms that encapsulate the salient elements of the claim and account for the minor state law variations.  *See* Appendices F-I.  Jury instructions will be used to carefully define concepts such as the required reliance (justifiable or reasonable) and the burden of proof (clear and convincing evidence or preponderance of evidence).  As with the other claims, the predominating focus of the inquiry rests almost entirely on Ford's conduct.

**3.    Breach of implied warranty grouping.**

Forty-nine states have adopted some form of the UCC's implied warranty of merchantability, and "[t]he elements of an implied warranty claim among the several states are quite similar, as one might expect with a uniform statute."  *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1013 (E.D. Mich. 2017); *see also In re Myford Touch*

---

resulting damages; and (vi) a duty to disclose based on special circumstances, such as exclusive or superior knowledge.

[24] *See Alcon Labs., Inc. v. Will Vision & Laser Ctrs., P.C.*, 126 Wash. App. 1025 (Wash. Ct. App. 2005).

[25] *See Liodas v. Sahadi*, 19 Cal. 3d 278, 292 (Cal. 1977); *D'Alessandro v. Lake Developers, II, LLC*, 2012 WL 1900543, at *8 n.4 (Tenn. Ct. App. May 25, 2012).

[26] The general overlapping elements are: (i) material omission by the defendant of a presently existing or past fact; (ii) knowledge or belief by the defendant of its falsity or concealment; (iii) an intention that the other person rely on it; (iv) justifiable reliance thereon by the other person; (v) resulting damages; and (vi) a duty to disclose based on a duty to disclose the whole truth once partial disclosure is made.

[27] *See Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).

[28] *See Wieczoreck v. H & H Builders, Inc.*, 475 So. 2d 227, 227 (Fla. 1985).

*Consumer Litig.*, 2016 WL 7734558, at *25 (certifying breach of implied warranty claims in seven states); *Cheminova Am. Corp. v. Corker*, 779 So. 2d 1175, 1180 (Ala. 2000) (upholding nationwide class for breach of implied warranty claims since "state-law variations can be recognized and dealt with by the trial court [and] questions of fact and law common to the class predominate over any questions affecting only individual members of the class"). Courts have certified implied warranty classes where automobile manufacturers knew about safety defects. *See*, *e.g.*, *Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether [defendant] was aware of the existence of the alleged defect, [and] whether [defendant] had a duty to disclose its knowledge….") (citing *Chamberlan*, 402 F.3d at 962).

A single Implied Warranty Class for the five relevant jurisdictions (California, Missouri, New Jersey, Pennsylvania, and Texas) is manageable because, as profiled above in Section VI.A.3., each jurisdiction has adopted UCC § 2-314 and generally requires the same elements for breach of the implied warranty of merchantability. The breach of implied warranty elements across these states are sufficiently similar to ensure a manageable verdict-finding exercise. *See also* Appendices F-I (Proposed Special Verdict Forms). To reiterate, the relevant inquiry in all of these states focuses on whether the product was defective at the time it was sold. *E.g.*, *Cholakyan*, 796 F. Supp. 2d at 1243. To the extent the notice element varies slightly between some states, it does not predominate because Ford had actual notice and internally admitted to the existence of the defect before a single Shelby was sold. Moreover, as the Eighth Circuit explained, "the differences between the courts [regarding the notice requirement of Section 2-607] may be more apparent than real." *N. States Power Co. v. ITT Meyer Indus., Div. of ITT Grinnell Corp.*, 777 F.2d 405, 408 n.3 (8th Cir. 1985).

**4.** **Unjust enrichment grouping.**

Plaintiffs' unjust enrichment claims can be grouped into four Unjust Enrichment Classes. Each Class shares common elements given that almost all states base unjust enrichment on the RESTATEMENT (FIRST) OF RESTITUTION § 1 and require the presence of the following basic, overlapping elements: (i) the plaintiff conferred a benefit; (ii) the defendant accepted or retained that benefit; (iii) under circumstances that would be unjust for the defendant to retain the benefit. Three additional classes are proposed for those states that require an additional element of, respectively, defendant's appreciation of the benefit conferred, lack of an adequate remedy for the

plaintiff, or defendant's wrongful conduct.  *See* Section VI.A.4, *supra*.  The proposed Unjust Enrichment Classes are:

- Unjust Enrichment Class 1 (basic RESTATEMENT definition):  California, Illinois.
- Unjust Enrichment Class 2 (basic RESTATEMENT test and requires that defendant appreciate the benefit):  Florida, Oregon, Pennsylvania, Tennessee, Washington.
- Unjust Enrichment Class 3 (basic RESTATEMENT test and requires an inadequate remedy at law):  New Jersey, New York.
- Unjust Enrichment Class 4 (basic RESTATEMENT test and requires defendant's wrongful conduct):  Missouri, Texas.

Manageability is further demonstrated by Plaintiffs' proposed Special Verdict Forms that encapsulate the salient elements of the claim and account for the minor state law variations.  *See* Appendices F-I.

Courts commonly certify multi-state classes for unjust enrichment claims.  For instance, the court in *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. at 697 n.40, certified a 17-state unjust enrichment subclass, finding that unjust enrichment law is "virtually identical" from state to state.  *See also In re Mercedes Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 119 (D.N.J. 2010) (minor variations in various states' elements of unjust enrichment are not material and do not create conflicts); *In re Checking Account Overdraft Litig.*, 307 F.R.D. at 675 (certifying subclasses for 20 jurisdictions and noting the "general agreement among courts that the 'minor variations in the elements of unjust enrichment . . . are not material and do not create an actual conflict'") (citation omitted);  *In re Abbott Labs. Norvir Antitrust Litig.*, 2007 WL 1689899, at *9 (N.D. Cal. June 11, 2007); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004); *cf. Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 569-70 (E.D. Mich. 2009) (agreeing with courts that decided unjust enrichment doctrines are materially same); *In re Cardizem*, 218 F.R.D. at 518 (characterizing unjust enrichment claims in various states as "virtually identical").

**C.**     **Plaintiffs will use common evidence to prove causation and the amount of damages.**

At class certification, Plaintiffs must be able to show that damages are capable of measurement on a class-side basis and that any damages model be consistent with the liability theory.  *Carriuolo*, 823 F.3d at 988 (citing *Comcast Corp.*, 133 S. Ct. at 1433).  "[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139).  "[W]here damages can be

- 40 -

computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." *Klay*, 382 F.3d at 1259-60 (footnotes omitted).[29]

For breach of implied warranty, each state permits recovery of the difference in value of the product received and the product as warranted. **CA**–CAL. COM. CODE § 2714; **IL**–810 ILCS 5/2-714; **MO**–V.A.M.S. 400.2-714; **NJ**–N.J. STAT. § 12A:2-714; **PA**–13 Pa.C.S.A.§ 2714; **TN**– TENN. CODE ANN. § 47-2-714; **TX**–TEX. BUS. & COM. CODE § 2.714. Overpayment falls squarely within the expansive damage provisions of the 11 relevant Consumer Protection Acts. For some Acts, courts permit the recovery of overpayment premium damages specifically. For others, the Act expressly recognizes the recovery of "actual" damages and the like. **CA**–CAL. CIV. CODE § 1780(a) (CLRA); *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890-91 (Cal. 2011); **FL**– *Carriuolo*, 823 F.3d at 986; **IL**–*Muir v. Playtex Prods., LLC*, 983 F. Supp. 2d 980, 990 (N.D. Ill. 2013); **MO**–MO. REV. STAT. § 407.0025; *Craft v. Philip Morris Cos., Inc.*, 2003 WL 23355745, at *8 (Mo. Cir. Ct. Dec. 31, 2003); **NJ**–*Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792-93 (N.J. 2005); **NY**–*Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (N.Y. App. Div. 2010); **OR**–*Weigel v. Ron Tonkin Chevrolet Co.*, 690 P.2d 488, 493-94 (Or. 1984); **PA**–*Lites v. Great Am. Ins. Co.*, 2000 WL 875698, at *2 n.1 (E.D. Pa. June 23, 2000); **TN**–*Spence v. Moody*, 1987 Tenn. App. LEXIS 3078, at *8 (Tenn. Ct. App. Nov. 18, 1987); **TX**–*Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 858 (Tex. Ct. App. 2005); **WA**–WASH. REV. CODE § 19.86.090.

Likewise, overpayment damages are recoverable for fraudulent concealment, whether those damages are considered lost benefit of the bargain, out of pocket repair costs, or any other

---

[29] *See also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1310 (11th Cir. 2008) (class treatment appropriate where plaintiffs contended that damages could be determined "with relative ease through basic forensic accounting" using defendant's own data); *Pickett v. IBP, Inc.* 2001 U.S. Dist. LEXIS 22453, at *35 (M.D. Ala. Dec. 21, 2001) ("[I]f damages can be computed using 'statistical techniques, the existence of individualized damage claims does not pose a barrier to certification."); *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 531 (W.D. Pa. 1994) (noting that where damages "are largely a matter of mathematical calculation" courts may find that common questions predominate); *Brown v. Pro Football*, 146 F.R.D. 1, 5 (D.D.C. 1992) (where proof of injury and damages "breaks down on what may be characterized as 'virtually a mechanical task,' 'capable of mathematical or formula calculations,' the existence of individualized claims for damages seems to offer no barrier to class certification on grounds of manageability.") (quoting *Windham v. American Brands*, 565 F.2d 59, 68 (4th Cir. 1977)); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 U.S. Dist. LEXIS 16658, at *13-14 (N.D. Ill. Nov. 15, 1994) ("possible complexity of a damage calculation" should not preclude class certification).

form of damage.  **CA**–*Lazar v. Superior Court*, 909 P.2d 981, 990 (Cal. 1996); **FL**–*Schryburt v. Olesen*, 475 So. 2d 715, 717 (Fla. Dist. Ct. App. 1985); **IL**–*Giammanco v. Giammanco*, 625 N.E.2d 990, 997-1001 (Ill. App. Ct. 1993); **MO**–*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, 687 F. Supp. 2d 897, 912 (W.D. Mo. 2009), *clarified on denial of reconsideration*, 2010 WL 286428 (W.D. Mo. Jan. 19, 2010); **NJ**– *Thiedemann*, 872 A.2d at 792; **NY**–*Hoeffner v. Orrick*, 2008 WL 4065922, at *13-14 (N.Y. Sup. Ct. Aug. 11, 2008); **OR**–*Pape v. Knoll*, 687 P.2d 1087, 1095-96 (Or. Ct. App. 1984); **PA**–*Subar, Inc. v. Precision Plastics, Inc.*, 1998 WL 150992, at *2 (E.D. Pa. Mar. 27, 1998); **TN**–*Harrogate Corp. v. Sys. Sales Corp.*, 915 S.W.2d 812, 817 (Tenn. Ct. App. 1995); **TX**–*Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 19 (Tex. Ct. App. 2016); **WA**–*McRae v. Bolstad*, 646 P.2d 771, 775 (Wash. Ct. App. 1982), *aff'd*, 676 P.2d 496 (Wash. 1984).  The California Plaintiffs' Unfair Competition Law and False Advertising Law claims permit recovery of "the excess of what the plaintiff gave the defendant over the value of what the plaintiff received."  *Pulaski & Middleman, LLC v. Google, Inc*., 802 F.3d 979, 988 (9th Cir. 2015) (UCL, FAL).

Money damages are also recoverable for unjust enrichment, usually but not always as a form of restitution.  **CA**– *Jordan v. Wonderful Citrus Packing LLC*, 2018 WL 4350080, at *5 (E.D. Cal. Sept. 10, 2018); **FL**–*Absolute Activist Value Master Fund Ltd. v. Devine*, 2017 WL 3188502, at *6 (M.D. Fla. July 25, 2017); **IL**–*Maloney v. Pihera*, 573 N.E.2d 1379, 1389-90 (Ill. App. Ct. 1991); **MO**–*Blue Cross Health Servs., Inc. v. Sauer*, 800 S.W.2d 72, 75 (Mo. Ct. App. 1990); **NJ**– *Jersey Shore Sav. & Loan Ass'n v. Edelstein*, 530 A.2d 1320, 1323 (N.J. Super. Ct. App. Div. 1989); **NY**–*Bennett v. John*, 151 A.D.2d 711 (N.Y. App. Div. 1989); **OR**–*Hitchcock v. Delaney*, 86 P.3d 73, 76-77 (Or. Ct. App. 2004); **PA**–*Meehan v. Cheltenham Twp*., 189 A.2d 593 (Pa. 1963); **TN**–*Carter v. Jackson–Madison Cty. Hosp. Dist*., 2011 WL 1256625, at *8–9 (W.D. Tenn. Mar. 31, 2011); **TX**–*Norhill Energy LLC v. McDaniel*, 517 S.W.3d 910, 919 (Tex. Ct. App. 2017); **WA**–*Young*, 191 P.3d at 1262.  This is sensible given that the remedy for unjust enrichment is "to place the plaintiff in as good a position as he or she would have been."  *Hernandez v. Lopez*, 103 Cal. Rptr. 3d 376, 380 (Cal. Ct. App. 2009).

Through economic expert Ted Stockton, Plaintiffs will use common evidence to prove recoverable damages under the foregoing authorities.  In accordance with economic theory,



*Comcast*, 569 U.S. at 38; *see also Nguyen v. Nissan N. Am.*, 2019 U.S. App. LEXIS 22296 (9th Cir. July 26, 2019) (benefit-of-the-bargain model as measured by the average cost of replacing the allegedly defective clutch system satisfies *Comcast* and Rule 23(b)(3)'s predominance requirement).

**D.    A class action is a superior method of adjudicating this dispute.**

The superiority analysis focuses "not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269. There are four non-exhaustive factors a court should consider in assessing whether a class action is superior to individual litigation:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

(D) the difficulties likely to be encountered in the management of a class action.

- 43 -

*Id*. (citing Fed. R. Civ. P. 23(b)(3)). All of these factors favor class treatment here.

Regarding the first factor, nearly all of the Class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages. Thus, "[t]here is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation[.]" *Id*. The second superiority factor also favors class certification, as Plaintiffs are not aware of any litigation proceeding elsewhere relating to the Defect.

Concentrating the litigation in this forum is logical and desirable for other reasons that tilt the third superiority factor in favor of certification. *First*, through handling Ford's motion to dismiss and numerous scheduling issues, this Court has become familiar with the factual and legal issues. *Id*. at 1271 ("it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters"). As this Court recognized in *Texas Air*, controversies are often "best managed as a class action, for this method allows all the [parties] to conduct all relevant discovery without repetition." 119 F.R.D. at 460. *Second*, holding separate trials for claims that could be tried together would be costly, inefficient and burden the court system; they should instead be tried together. *Klay*, 382 F.3d at 1270. Neither the parties nor the judicial system would benefit from redundant litigation in these matters. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 1994 U.S. Dist. LEXIS 16658, at *15 (N.D. Ill. Nov. 15, 1994) ("[w]e fail to see the logic in defendants' contention that 50,000 individual actions are less complex than a single class action"). Indeed, "[w]here predominance is established, this consideration will almost always mitigate in favor of certifying a class." *Klay*, 382 F.3d at 1270; *see also Carriuolo*, 823 F.3d at 989 ("class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency" where common questions predominate). *Third*, the small value of the individual claims supports certification, especially, as here, where the amounts in controversy make it unlikely that individual plaintiffs could find legal representation on a contingency fee basis "when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings." *Klay*, 382 F.3d at 1271.

The final superiority factor—manageability—focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). The question is whether multiple individual lawsuits would be more

- 44 -

manageable than a class action, and not whether a class here will create significant management problems.  *Klay*, 382 F.3d at 1273.  Indeed, this fourth factor "will rarely, if ever, be in itself sufficient to prevent certification."  *Id*. at 1272; *see also Visa Check/MasterMoney*, 280 F.3d at 140 (refusal to certify a class solely on grounds of manageability is disfavored and "should be the exception rather than the rule").  Plaintiffs do not foresee serious manageability problems and certainly none that make over a thousand individual actions a better alternative; this case can be tried in an efficient manner.

## VII.   CONCLUSION

Plaintiffs have demonstrated that they satisfy all of the elements of Rule 23(a) and (b)(3).  The class action mechanism is not only the best and most efficient way to adjudicate the Class members' claims in this case, it is also the only viable method of doing so.  For all of the foregoing reasons, the Court should certify the proposed Classes.[30]

Dated:  July 30, 2019                    Respectfully submitted,


By: */s/ Stuart Z. Grossman*                   
         Stuart Z. Grossman

Stuart Z. Grossman (Fla. Bar No. 156113)
Rachel Furst (Fla. Bar No. 45155)
GROSSMAN ROTH YAFFA COHEN
2525 Ponce de Leon Blvd., Suite 1150
Coral Gables, FL 33134
Telephone: (888) 296-1681
Facsimile: (305) 285-1668
Email: szg@grossmanroth.com
Email: rwf@grossmanroth.com

---

[30] Plaintiffs will file with their reply papers a Proposed Order Granting Plaintiffs' Motion for Class Certification.

Steve W. Berman (*pro hac vice*)
Catherine Y.N. Gannon (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: catherineg@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

- 46 -

## CERTIFICATE OF GOOD FAITH CONFERENCE

I certify that I have conferred in good faith as required by S.D. Fla. L.R. 7.1(a)(3) on July

29, 2019.

<u>/s/  Rachel Wagner Furst</u>
Rachel Wagner Furst

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by the Court's CMECF system on July 30, 2019, on all counsel or parties of record identified on the attached Service List.

By: <u>/s/ Rachel Wagner Furst</u>
Rachel Wagner Furst
Fla. Bar No. 45155

- 47 -

010678-11/1154865 V1

## SERVICE LIST

Case No. 1:17-cv-21087-FAM

*Attorneys for Defendant Ford Motor Company*

Henry Salas (Fla. Bar No. 815268)
Brian Dominguez (Fla. Bar No. 91019)
Cole, Scott & Kissane, P.A.
9150 So. Dadeland Blvd., Suite 1400
Miami, FL 33156
Telephone: (305) 350-5367
Facsimile: (305) 373-2294
Email: henry.salas@csklegal.com
Email: Jennifer.ruiz@ckslegla.com
Email: brian.dominguez@csklegal.com

David George (*pro hac vice*)
John M. Thomas (*pro hac vice*)
Dykema Gossett PLLC
2723 South State Street, Suite 400
Ann Arbor, MI 48104
Telephone: (734) 214-7673
Email: DGeorge@dykema.com
Email: chammond@dykema.com
Email: docket@dykema.com
Email: JThomas@dykema.com

Ashley R. Fickel (*pro hac vice*)
Kista L. Lenart (*pro hac vice*)
DYKEMA GOSSETT PLLC
AFickel@dykema.com
KLenart@dykema.com

- 48 -