UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 17-21087-CIV-MORENO**

GEORGE TERSHAKOVEC, DIANA TERSHAKOVEC, JACQUES RIMOKH, HERBERT ALLEY, MICHAEL DELAGARZA, ATTILA GONDAN, ERIC KAMPERMAN, GREG ROBERTS, RICHARD KOWALCHIK, TRAVIS MCRAE, MICHAEL MCCURRY, MARK HOCHSPRUNG, JOHN AUBREY, JOSE CRUZ, ERIC EVANS, BYRON HARPER, and TODD NEWTON, individually and on behalf of all others similarly situated,

        Plaintiffs,

vs.

FORD MOTOR COMPANY,

        Defendant.
_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION IN PART[1]

THE MATTER was referred to the Honorable Jonathan Goodman, United States Magistrate Judge, for a Report and Recommendation on the Parties' various *Daubert* motions. The Magistrate Judge filed a Report and Recommendation **(D.E. 215)** on **May 12, 2021**. The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, it is

---

[1] The Court is aware of the other pending motion in this case—the Plaintiffs' Motion for Reconsideration. It is under advisement.

**ADJUDGED** that United States Magistrate Judge Jonathan Goodman's Report and Recommendation is **AFFIRMED IN PART** and **ADOPTED IN PART.**

Thus, it is **ADJUDGED** that Ford's Motion to Exclude the Testimony of Plaintiff's Experts Dr. Dahm and Dr. Honka is **DENIED** with respect to Dr. Honka, Plaintiffs' Motion to Exclude Dr. Harless' Testimony is **GRANTED**, and Plaintiffs' Motion to Exclude Dr. Gregory's Testimony is **DENIED**.

Below, the Court addresses Magistrate Judge Goodman's Report and Recommendation on the Parties' *Daubert* motions. Four experts were challenged—two on each side. The current order only addresses *three* experts and reserves discussion and ruling on Dr. Dahm.

**Ford's Dr. Harless**

Magistrate Judge Goodman's Report and Recommendation recommends excluding the opinions of Dr. Harless. Magistrate Judge Goodman finds that Dr. Harless' opinion regarding Plaintiffs' damages does not meet *Daubert*'s reliability test because his methodology cannot be tested, and his data set was too small to be reliable. Ford objects to this finding, arguing that Dr. Harless' method is widely recognized and the data upon which he relied is seen as generally reliable.

First, a brief overview of Dr. Harless' challenged opinion. Dr. Harless opines that "the alleged defect did not adversely affect the value" of the class vehicles, either new or used. Dr. Harless attempted to demonstrate that 2016 Shelby GT350's without coolers were no less valuable once consumers found out about the defect by comparing the price differential of new 2016 Shelby GT350's without coolers to used, post-defect reveal 2016 Shelby GT350's with the price differential between new and used 2016 Shelby GT350's *with* coolers. In other words, if the differences in price between the two sets of vehicles are the same, the defect did not affect the

value of the car and Plaintiffs did not overpay. Dr. Harless chose the 2016 Shelby's *with* coolers are the comparator vehicle because they were the same model year and do not suffer from potential biases that come with inter-model comparisons such as styling premiums and sales incentives. For the price of used cars, Dr. Harness pulled from National Association of Automobile Dealers data.

Magistrate Judge Goodman found three faults with Dr. Harless' analysis: 1) Dr. Harless offered no data, testing, or theoretical argument to validate his assumption that the 2016 Shelby GT350 with coolers could predict the counterfactual prices of the class vehicles, therefore rendering his analysis untestable; 2) the National Association of Automobile Dealers' data was based on a very small sample size of 2016 Shelby sales; and 3) disclosure of the defect was not wide enough to assume it was factored in to the market prices of the used 2016 Shelby's. Albeit a close question, the Court agrees with Magistrate Judge Goodman's conclusion that Dr. Harless' testimony is unreliable.

First, Ford objects that Magistrate Judge Goodman erred because he took issue with Dr. Harless' *application* of a widely accepted methodology to the facts, rather than taking issue with the methodology itself. Ford contends that questions about an expert's *use* of a sound methodology should go to weight, rather than admissibility. But the text of Rule 702 itself requires that "the expert has reliably applied the principles and methods to the facts of the case." *See also Rudd v. Gen. Motors Corp.*, 127 F. Supp. 2d 1330, 1337 (M.D. Ala. 2001) ("Going beyond the permissive language of Joiner, the plain language of new Rule 702, as well as the advisory committee notes to the new Rule, makes it clear that this court is now obliged to screen expert testimony to ensure it stems from, not just a reliable methodology, but also a sufficient factual basis and reliable application of the methodology to the facts.").

3

Next, Ford says the Magistrate's conclusion that Dr. Harless' selection of comparator vehicles cannot be tested is "contrary to the very idea of ever using a comparator-based depreciation model . . ." This objection is frivolous. As noted above, Magistrate Judge Goodman does not find that the methodology of comparator-based depreciation is inherently unreliable, but instead finds that Dr. Harless did not sufficiently explain his reasons for choosing the comparator that he did (the 2016 Shelby GT350 with coolers). Crucially, Magistrate Judge Goodman found, Dr. Harless did not perform a validation test as a screen for alternative sources of causation and/or confounding variables. The Court agrees with Magistrate Judge Goodman's Report on this point.

Further, Ford objects to the Report's conclusion that the National Automobile Dealer Association data Dr. Harless relied upon is unreliable. The Report found the data lacking because 1) there were too few vehicle sales and 2) because there were too few disclosures about the defect to assume market-wide knowledge. Ford's objection is well-taken with respect to the second point because Ford cannot ask the Court to assume class-wide knowledge and reliance in its summary judgment and class certification argument while asking the Court to assume the market did *not* know about the defect in its *Daubert* arguments. But again, Ford's objection to the sample size argument misses the point. Ford points out that the National Association of Automobile Dealers' data is the "premier valuation guide in the used vehicle industry" and that federal courts regularly approve experts who rely upon it. Magistrate Judge Goodman credited Plaintiffs' argument that National Association of Automobile Dealers, due to the very small sample size of 2016 Shelby's sold in the relevant time period, had to use other "data smoothing" factors such as interest rates, consumer sentiment, and the general used car market to build its models. Because these additional factors are uniform for all cars, the models with small sample sizes are less likely to diverge. Thus,

4

the Court agrees that there is a large analytical leap between the facts of this case and the experts' opinion and Dr. Harless' opinion with respect to damages estimation should be excluded.

**Ford's Dr. Gregory**

Ford retained Dr. Gregory, mechanical engineer, to offer expert testimony about the performance and safety of the class vehicles. Dr. Gregory offers three opinions relevant here: 1) He drove 760 miles on public roads without entering Limp Mode; 2) The class vehicles are "track capable" because the average lap time only increases 3% when Limp Mode is activated; 3) The class vehicles are safe even when they enter Limp Mode. Magistrate Judge Goodman find that the first opinion should be excluded while the other two are admissible. The Court agrees.

Ford objections to the Report and Recommendation's finding that Dr. Gregory may not testify about his unrecorded street driving. Dr. Gregory did not track routes, dates/times, driving speed, rotations per minute, the weather, or otherwise apply any sort of methodology. Ford does not contest this characterization of Dr. Gregory's analysis, but says that Dr. Gregory should be able to testify about those 760 miles as personal observations that merely *contribute* to his expert opinion. It is true that experts may rely on even otherwise inadmissible observations so long as experts in the respective field "would reasonably rely on those kinds of facts or data in forming an opinion on the subject...." Fed. R. Evid. 703. The Rule goes on to say that "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury **only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.**" *Id.* (emphasis added). The Court believes that testimony about the nearly 760 miles would be more not probative than prejudicial. First, it bears noting that the Court has already dismissed the Plaintiffs' claims about Limp Mode on public roads, so this part of Dr. Gregory's testimony may be largely irrelevant anyway. Further, as Ford and Magistrate Judge Goodman note,

Dr. Gregory only used this unrecorded driving as a secondary means of forming his opinion—the jury will have ample material from which to determine whether they wish to credit his testimony without these additional 760 miles. Thus, the Court adopts Magistrate Judge Goodman's report with respect to Dr. Gregory.

**Plaintiffs' Dr. Honka**

Plaintiffs retained Dr. Honka as a marketing expert to provide opinions regarding Ford's marketing strategy, tactics, and execution for the 2015-2016 Shelby GT350s, specifically with respect to any themes in Ford's marketing of the Subject Vehicles. Dr. Honka is currently an assistant professor of marketing at the University of California Los Angeles Anderson School of Management. She has a Ph.D. in marketing and an MBA from the University of Chicago Booth School of Business. Dr. Honka's areas of academic expertise include consumer shopping behavior, advertising, and digital entertainment; she has published in leading marketing and economics journals and serves on the editorial review boards for two leading marketing journals.

In her report, Dr. Honka offers five opinions: (1) that Ford's materials are consistent with a "target segment marketing campaign" aimed at "performance enthusiasts"; (2) that Ford's marketing strategy was premised on track capability being a highly material attribute to this group; (3) that performance enthusiasts were willing to pay a premium for a track-capable car that could withstand a commercial track day; (4) that Ford undertook an integrated marketing communications approach to create a common and consistent marketing campaign that touted the track capability of all Shelby variants; and (5) that Ford succeeded in communicating the common message to performance enthusiasts that all variants of the Shelby GT350 were track capable. Magistrate Judge Goodman recommends denying Ford's motion to exclude Dr. Honka.

Ford does not object to the Report's finding that Dr. Honka is qualified or that her testimony would be helpful to the jury. It objects, however, that the Report "ignored Ford's overarching argument that Dr. Honka's remaining four opinions rely on an unsupported and inaccurate definition of 'track capability.'" Dr. Honka's opinion assume "track capability" means four to five 20-minute sessions. The Court finds this objection unpersuasive. As Plaintiffs show in their response to Ford's objections, Dr. Honka had ample basis for her definition of "track capable." For example, Dr. Honka reviewed schedules from eight separate track organizations, Plaintiffs' testimony, and Ford employee testimony. Ford retorts that these documents refer to "track performance" or "track" generally—not 20-minute session track days. But this ignores that Dr. Honka says she relied on Ford's Rick Owens testimony that "completing an occasional track day" [was] "synonymous with being track capable" from a marketing point of view." Ford may have good reason to disagree with her definition and may raise it on cross-examination, but it is wrong to say her definition is so flawed as to not be the product of reliable principles and methods. Thus, the Court adopts the Report's Recommendation with respect to Dr. Honka.

**Plaintiffs' Dr. Dahm**

Finally, Dr. Werner Dahm is Plaintiffs' star liability expert. He offers opinions on many topics including, but not limited to, that the Powertrain Thermal Management Systems were defective, the defect exists because of a lack of cooling, and that the defect manifests itself in Limp Mode. He also testifies as to *how* the defect can be repaired—replacing the transmission with one from the more expensive Shelby's. Finally, the Dahm report also testifies as to *when* the vehicle enters Limp Mode. Notably, Dr. Dahm's time estimate differs from that of defense expert Dr. Gregory.

Magistrate Judge Goodman's Report recommends excluding Dr. Dahm as unreliable because he is unqualified, his conclusions are not supported by facts, a reliable methodology, or first-hand experience, and his opinion will not be helpful to the jury. The Court is aware of the importance of Dr. Dahm's testimony and the valid issues raised by both sides. Thus, before ruling on the admissibility of Dr. Dahm's testimony, the Court would like to hold an evidentiary hearing (in person) where Dr. Dahm can testify and be questioned by both parties. The Court asks that the parties confer as to when they are both available for an evidentiary hearing (along with Dr. Dahm) and notify of the Court of a few dates that will work for all involved by **August 27.** Pursuant to the Court's recent order of continuance, this evidentiary hearing should take place with ample time for the Court to rule before trial on November 22.

DONE AND ORDERED in Chambers at Miami, Florida, this 13th of August 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record