**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:17-cv-21087-FAM

GEORGE TERSHAKOVEC, DIANA TERSHAKOVEC, JOHN AUBREY, BYRON HARPER, RICHARD KOWALCHIK, ERNESTO LARIOS, SHAUNTI YANIK-LARIOS, JACQUES RIMOKH, MARK HOCHSPRUNG, FRANK PORTER, GREG ROBERTS, WAYNE LINN, STEPHEN KELLY, JILL KELLY, JOSH LONG, JOSE CRUZ, ATTILA GONDAN, HERBERT ALLEY, ERIC KAMPERMAN, TRAVIS MCRAE, TODD NEWTON, and ERIC EVANS, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

FORD MOTOR COMPANY,

Defendant.

**DEFENDANT FORD MOTOR COMPANY'S
MOTION FOR CONTINUANCE OR, IN THE ALTERNATIVE, FOR SEPARATE
INDIVIDUAL TRIALS**

Defendant Ford Motor Company ("Ford"), by and through its undersigned attorneys, hereby files this Motion for Continuance, or in the alternative, for Separate Individual Trials. Specifically, given that the Eleventh Circuit has stayed the deadline for providing class notice in this matter, proceeding with trial as scheduled would violate the rule against one-way intervention, and Ford therefore requests an order continuing trial until after the Eleventh Circuit has ruled on Ford's pending appeal, notice has been given to the class, and class members have been given an opportunity to opt out. To the extent the Court decides to nonetheless proceed with trial, Ford does not waive its objections regarding one-way intervention, but requests an order (1) confirming that any trial held before the Eleventh Circuit issues its opinion on Ford's pending appeal, and before class members are given notice and an opportunity to opt out, will be a trial on the individual claims of the Named Plaintiffs only, and (2) requiring that the claims of each Plaintiff be tried separately from the claims of other Plaintiffs. The bases for this motion include Fed. R. Civ. P. 42(b) and are discussed in the incorporated Memorandum of Law.

## BACKGROUND

On July 1, 2021, this Court entered an order certifying various classes and ultimately designated 13 of the remaining 18 Named Plaintiffs as class representatives.[1] (D.E. 231, 277.) Those 13 Plaintiffs are pursuing various individual and class claims under the laws of seven states (California, Florida, Missouri, New York, Tennessee, Texas, and Washington.) The remaining Named Plaintiffs are pursuing only their individual claims under the laws of various states.[2]

---

[1] Three of the 18 vehicles are co-owned by three Plaintiffs, and there are a total of 21 remaining Plaintiffs, but for convenience Ford will refer to 18 Plaintiffs, counting the co-owners as a single Plaintiff.

[2] At one time there was a 19th Plaintiff (Jose Cruz), but summary judgment was entered against him on all of his claims. (D.E. 231.)

Subsequently, this Court scheduled a jury trial for June 21, 2022. (D.E. 276.) On July 15, 2021, Ford filed a petition with the Court of Appeals for the Eleventh Circuit seeking leave to appeal this Court's class certification order pursuant to Fed. R. Civ. P. 23(f). On February 28, 2022, the Eleventh Circuit granted Ford's Rule 23(f) Petition. (D.E. 280.) This Court denied Ford's motion to stay proceedings pending resolution of Ford's appeal. (D.E. 290.) Ford renewed its motion for stay in the Eleventh Circuit. (D.E. 292.) That court granted Ford's motion in part and stayed the deadline for providing class notice. (Ex. A, April 1, 2022 Order (11th Cir. Case No. 22-10575).) Otherwise, however, it denied Ford's motion. (*Id.*)

As a result of the orders of this Court and the Eleventh Circuit, trial in this matter remains scheduled to begin on June 21, 2022, before the Eleventh Circuit will have ruled on Ford's appeal, before notice will have been given to the class, and before class members have been given an opportunity to opt out of the class.

## ARGUMENT

### I. THE ONE-WAY INTERVENTION RULE PRECLUDES A TRIAL UNTIL THE CLASS IS GIVEN NOTICE AND AN OPPORTUNITY TO OPT OUT.

As the Eleventh Circuit has recognized, certification under Rule 23(b)(3) requires that "class members receive notice of the suit 'well before the merits of [it] are adjudicated.'" *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1078 (11th Cir. 2000) (citations omitted). Thus, any trial in this case before the class is given notice and an opportunity to opt out would violate the rule against one-way intervention. "'One-way intervention' occurs when the potential members of a class action are allowed to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'" *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1252-53 (11th Cir. 2003), *quoting Am. Pipe & Constr. Co. v. State of Utah*, 414 U.S. 538, 547 (1974). "The result is that putative class members can simply observe the

proceedings without assuming any risk that their individual claims may be precluded by an adverse ruling on the merits." *Newton v. S. Wood Piedmont Co.*, 163 F.R.D. 625, 630 (S.D. Ga. 1995), *aff'd*, 95 F.3d 59 (11th Cir. 1996). That is because without class certification, the absent plaintiffs would not be bound by the court's ruling on the merits. *Collins v. Quincy Bioscience, LLC*, 2020 U.S. Dist. LEXIS 48236, at *88 (S.D. Fla. Mar. 19, 2020). "Rule 23(c)(2)'s requirement that, in opt-out class actions, notice be given to all class members as soon as practicable was intended by Congress to prevent one-way intervention." *London*, 340 F.3d at 1252-53.

For example, in *Goren v. LawPracticeCLE, L.L.C.*, 2022 U.S. Dist. LEXIS 50023 (M.D. Fla. Mar. 21, 2022), the plaintiff moved for summary judgment in advance of class certification. The Court refused to rule on the motion because of the potential for one-way intervention:

> Here, if the Court were to rule in favor of Plaintiff on his motion, he would surely seek class certification. But if the Court were to rule against Plaintiff, he may choose not to seek class certification, which would not preclude other members of the putative class from initiating their own lawsuits against Defendant. … [T]his is the unfairness that the rule against one-way intervention aims to avoid.

*Id.* at *5-6.

The current posture of this case would present a similar problem, even though class certification has already been granted here. If trial proceeds as scheduled, prior to class notice and the opt out deadline, class members will be able to wait and see whether Plaintiffs succeed at trial, then subsequently—if the Eleventh Circuit affirms class certification and notice is sent out—decide whether they want to opt out after issues of liability have already been adjudicated. In short, no trial can be held at this time without violating the one-way intervention rule.

## II. IF THE COURT NONETHELESS PROCEEDS WITH TRIAL, THE COURT SHOULD ORDER SEPARATE INDIVIDUAL TRIALS FOR EACH NAMED PLAINTIFF.

The one-way intervention rule bars trials of individual claims over Defendant's objection at this stage of the litigation for the same reasons it bars a plaintiff's motion for summary judgment on individual claims prior to class certification. *See Goren, supra.* If the Court nevertheless concludes that the one-way intervention rule does not preclude trial on the individual claims of the Named Plaintiffs, Fed. R. Civ. P. 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims crossclaims, counterclaims, or third-party claims."[3] District courts have "broad discretion" to order separate trials under this rule, including separate trials in cases involving multiple Plaintiffs. *See, e.g., Ulysse v. Waste Mgmt.*, 645 F. App'x 838, 839 (11th Cir. 2016) (severing and ordering separate trials for 79 plaintiffs).

For example, in *Grayson v. K Mart Corp.*, 849 F. Supp. 785 (N.D. Ga. 1994), eleven of the defendant's former store managers who were employed in stores located in Alabama, Florida, Georgia, and North Carolina brought suit for age discrimination under federal law and for common law intentional infliction of emotional distress under the laws of their home states. The court found that the claims were improperly joined under Fed. R. Civ. P. 20, but that even if joinder were proper, severance and separate trials were appropriate pursuant to Rule 42(b) because of the potential for "extreme prejudice" to the defendant. *Id.* at 789.

> Each plaintiff must prove liability on the part of the defendant with respect to the adverse action defendant took with respect to him. It is precisely this need to focus the jury's attention on the merits of each individual plaintiff's case that counsels against proceeding

---

[3] Since the class has not yet received notice and an opportunity to opt out, there can be no trials on class claims at this point. But to the extent trials of class claims are required in the future, the same considerations identified below will require separate trials of the subclasses. Ford will bring an appropriate motion if, in the future, trials of class claims are required.

5

> with these cases in one consolidated trial. There is a tremendous danger that one or two plaintiff's unique circumstances could bias the jury against defendant generally, thus, prejudicing defendant with respect to the other plaintiffs' claims. Contrary to plaintiffs' arguments, they are not "prejudiced" by having to prove defendant's liability to each plaintiff individually. The ADEA does not provide a right for one plaintiff to recover because a defendant may have discriminated against another plaintiff of like age.

*Id*. at 790. "Moreover, plaintiffs' state law claims arise under the laws of four different states. The resulting confusion and prejudice from the scenario presented by a common trial of all plaintiffs' claims against the defendant would be intolerable." *Id.* at 791.

Similarly, in *Nettles v. Daphne Utils*., 2014 U.S. Dist. LEXIS 58302 (S.D. Ala. Apr. 28, 2014), three Plaintiffs alleged employment discrimination on the basis of race and retaliation, in violation of federal law.  The district court found that the claims were properly joined because "Plaintiffs bring the same or very similar claims largely under the same statute arising from the same or similar conduct by the same corporate defendant at the same time."  *Id.* at *5-6. Nevertheless, the court ordered separate trials pursuant to Rule 42(b):

> Daphne Utilities has made a persuasive showing of prejudice "if evidence of other instances of alleged discrimination are presented to the jury on each Plaintiffs' [*sic*] claim." (Doc. 13, at 8.) There is, of course, a risk "that one or two plaintiff's [*sic*] unique circumstances could bias the jury against defendant generally, thus prejudicing defendant with respect to the other plaintiffs' claims." *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 790 (N.D. Ga. 1994). And because each plaintiff's claims involve a distinct set of facts and witnesses (tailored to that plaintiff's specific circumstances), the Court expects that there would be little redundancy in evidentiary presentation from one plaintiff's trial to the next. Further, bifurcating each plaintiff's claims for trial would mitigate the risk of jury confusion that may arise from presentation of disparate facts concerning the distinct claims of each of three different plaintiffs, all lumped together in the same trial. Accordingly, in the interests of efficiency and the fair administration of justice, defendant's Motion to Separate for Trial is granted.

*Id*. at *10-11.

The same risk of prejudice and confusion warrants separate trials in this case. The 18 Plaintiffs assert a potpourri of claims under the laws of at least nine states[4]. They purchased their vehicles in separate transactions at different times after viewing different materials and having been told different things by different people.  For example:

- Plaintiff Eric Kamperman "plainly knew the difference between the Tech package and the other Shelbys" (D.E. 231 at 11) when he bought his vehicle in Texas in December 2015. He understood that the vehicle lacked coolers that would be desirable for a "track dedicated car." (D.E. 140 at 13-14, and exhibits cited therein). Further, Kamperman's pre-purchase research revealed concerns as to whether a Tech package Shelby could be taken on a track (*Id.*), but apparently he believed the vehicle was nonetheless track capable because he reviewed a Ford promotional document that listed the vehicle on the "same page with the other track ready cars." (D.E. 231 at 11.) Kamperman pursues claims of omission-based statutory fraud, breach of implied warranty, and unjust enrichment under Texas law, as well as a claim for violation of the federal Magnuson-Moss Warranty Act. (D.E. 243.)

- Unlike Plaintiff Kamperman, Plaintiff Herbert Alley claims that at the time he purchased his vehicle in Texas in February 2016, he did not know the vehicle was not equipped with transmission and differential coolers, nor did he understand that different models had different track capabilities. (Ex. B, Alley Dep. Transcript at 25-26, 58). And unlike Kamperman, Alley did not recall whether he reviewed Ford promotional materials prior

---

[4] Under this Court's rulings, the law of the states where these Plaintiffs purchased their vehicles would apply.  However, the Complaint asserts no claims under the laws of two states (Michigan and Delaware) where two Plaintiffs (Rimokh and Linn) purchased their vehicles.  At an appropriate time, Ford will move for judgment on the pleadings or judgment as a matter of law as to these Plaintiffs.

to his vehicle purchase. (*Id.* at 17.) Like Kamperman, Alley pursues claims of omission-based statutory fraud, breach of implied warranty, and unjust enrichment under Texas law as well as a federal Magnuson-Moss Warranty Act claim. But unlike Kamperman, Alley also pursues claims of common law fraud and breach of express warranty under Texas law. (D.E. 243.)

- Plaintiff Richard Kowalchik purchased his Tech package-equipped Shelby vehicle in Florida in January 2016. Mr. Kowalchik knew at the time of purchase that the Tech package vehicle did not have coolers, and he described himself as a "gearhead" and testified that he planned to add coolers to his vehicle after purchase because a car is not "complete" without them. (D.E. 231 at 12.) Mr. Kowalchik pursues an omission-based statutory fraud claim and an unjust enrichment claim under Florida law. (D.E. 243.)

- Plaintiff John Aubrey, on the other hand, did not know that his Base package Shelby did not have a differential cooler in November 2015 when he bought the vehicle in Florida. (D.E. 140-9 at p. 15 of 20). Like Mr. Kowalchik, Mr. Aubrey pursues omission-based statutory fraud and unjust enrichment claims under Florida law, but unlike Mr. Kowalchik, Mr. Aubrey also pursues implied and express warranty claims and a Magnuson-Moss claim. (D.E. 243.)

- Plaintiff Josh Long purchased his vehicle in May 2016 in Oregon (D.E. 140 at 13, and exhibits cited therein), after the date the Court chose in recognition of the fact that "as time goes on, potential purchasers become increasingly likely to discover the truth about the class vehicles' defect." (D.E. 251 at 1.) Prior to purchase, Mr. Long was aware that the vehicle did not have transmission and differential coolers. (D.E. 140-26.) He was also aware of a YouTube video and other information demonstrating that the vehicles went

8

    into limp mode, and although he was told by Ford customer service that there was "no certain fix," he felt that Ford dealership personnel reassured him that he would not have a problem with limp mode. (*Id.*; D.E. 140 at 13, and exhibits cited therein; D.E. 231 at 11.) Mr. Long pursues claims of implied warranty, express warranty, unjust enrichment, and common law fraud (but not statutory fraud) under Oregon law, as well as a claim for violation of the Magnuson-Moss Warranty Act. (D.E. 243.)

- Plaintiff Frank Porter purchased his vehicle used in Illinois in April 2017 (Ex. C, Porter Dep. Transcript, at 143-144), after the initial complaint was filed in this matter, and the Court has acknowledged that "surely many class members had to know of the defect *before* the complaint was filed." (D.E. 251 at 2.) While Mr. Porter claims he was not aware of the alleged defect before he bought his vehicle, he admitted seeing a video discussing limp mode before his purchase. (Ex. C at 130-133). Mr. Porter pursues claims including statutory and common law fraud under Illinois law, which require consideration of all information available to the plaintiffs and whether the plaintiff could have discovered the truth through reasonable inquiry. (D.E. 245, at 36-38.) Mr. Porter also pursues an unjust enrichment claim, even though unlike the other plaintiffs identified above, he purchased his vehicle used.

And there are at least 10 more Plaintiffs, each of whom is asserting a different combination of claims under the laws of various states; each of whom bought at different times when different information was available; and each of whom knew and understood different things. Evidence admissible as to some Plaintiffs will not be admissible as to others, and the jury will have to be instructed accordingly. Expecting a single jury to remember and understand the

facts and the instructions applicable to all 18 Plaintiffs, and to apply the law of the correct state to the facts relevant to each Plaintiff's claims, is unrealistic at best.

Plaintiffs will undoubtedly rely on the facts that there will be some overlap of witnesses and that 18 trials will be more time consuming than one trial. The court in *Grayson* considered and rejected these same arguments:

> The Court finds plaintiffs' argument regarding judicial economy unpersuasive. Plaintiffs completely ignore the complexities of conducting a trial which involves eleven largely unrelated events. While the logistical inefficiency of conducting such a trial may not completely offset the inefficiency of having repeated presentation of evidence, the Court concludes, given the other factors which weigh so heavily in favor of separation, that concerns about judicial efficiency do not preclude separation.
.

*Id.* at 790-791.

Moreover, if the Eleventh Circuit ultimately reverses this Court's decision on class certification because of the need to evaluate each class member's claims individually, there is a significant risk that a single trial of all 18 individual Plaintiffs will be overturned for the same reason. *Cf. Botero v. Commonwealth Limousine Serv.*, 302 F.R.D. 285, 287 (D. Mass. 2014). In *Botero*, the district court denied conditional class certification in an FLSA action, and 14 individual plaintiffs sought joinder of their claims pursuant to Rule 20. The district court found that Rule 20(a) joinder was unwarranted for "substantially the same reasons" it denied class certification: "The case-by-case, fact-intensive nature of each chauffeurs' wage claim would undoubtedly create logistical difficulties for defendants, as the defenses it raises against each chauffeur are likely to be factually individualized." *Botero,* 302 F.R.D. at 287. "Rather than expediting the litigation, the case would devolve into 'scores of mini-trials involving different evidence and testimony' regarding each [plaintiff's]factual circumstances." *Id.*.

The district court in *Alverson v. Elkhart Prods. Corp.*, 2022 U.S. Dist. LEXIS 6967 (W.D. Ark. Jan. 13, 2022) reached the same conclusion:

> Just as these 43 plaintiffs were not sufficiently similarly situated to proceed in a collective action, they are not sufficiently similarly situated to proceed as joint plaintiffs under Rule 20. Plaintiffs concede that individualized questions of law and fact will arise in this case. As in *Botero*, the Court finds that this case would likely devolve in 43 mini-trials requiring different evidence, testimony, and necessitating individualized factual findings, contrary to notions of judicial efficiency. Additionally, requiring Defendant to prepare to defend against 43 mini-trials in one action would be contrary to fundamental fairness and would result in unfair prejudice. Finally, … requiring a jury to make individualized findings of fact for 43 plaintiffs and keep these findings of fact separate in their heads would create great risk of jury confusion. These considerations necessitate dismissal of parties pursuant to Rule 21.

*Id.* at *4-5.[5]

In short, trying the multiple claims of 18 individual Plaintiffs in a single trial under the laws of eleven states may be inconsistent with the holdings of the Eleventh Circuit if that court ultimately reverses class certification in this case.

## **CONCLUSION**

Trial in this matter should be continued because it would violate the rule against one-way intervention to hold trial as currently scheduled. If there is nonetheless to be a trial in this case over Ford's objection before the Eleventh Circuit's ruling, it must be on the individual claims only since notice has not been provided to the class, and considerations of both prejudice and judicial efficiency dictate that separate trials be ordered pursuant to Rule 42(b). Attached hereto as Exhibit D is a proposed order granting Ford's motion for a continuance and denying the remainder of the motion as moot at this time, and attached hereto as Exhibit E is a proposed order denying Ford's motion for a continuance but granting Ford's motion to the extent it requests separate trials on the individual Named Plaintiffs' claims.

---

[5] Rule 20 (allowing permissive joinder), 21 (severance of claims) and Rule 42(b) all "provide the Court with the same wide discretion to order severance." *Bender v. Miami Shores Vill.*, 2011 U.S. Dist. LEXIS 174631, at *6 (S.D. Fla. June 6, 2011); *see also Ulysse,* 645 F. App'x 838 at 839-40.

## **Local Rule 7.1(a)(3) Certification**

Pursuant to S.D.F.L. Local Rule 9.1(a)(3), counsel for Plaintiffs and Defendant have conferred in a good faith effort to resolve the issues raised in the motion and have been unable to do so.

Dated: April 26, 2022

        COLE, SCOTT & KISSANE, P.A.

        By: */s/ Henry Salas*
        Henry Salas, Esquire
        Fla. Bar No.:  815268
        Attorneys for Defendant
        Dadeland Centre II – Suite 1400
        9150 South Dadeland Boulevard
        Miami, FL 33156
        Telephone: (786) 268-6419
        Facsimile: (305) 373-2294
        Email: henry.salas@csklegal.com

        John M. Thomas (*pro hac vice*)
        David M. George (*pro hac vice*)
        Krista L. Lenart (*pro hac vice*)
        DYKEMA GOSSETT PLLC
        2723 South State Street, Suite 400
        Ann Arbor, MI 48104
        Telephone: (734) 214-7613
        Email: jthomas@dykema.com
        Email: dgeorge@dykema.com
        Email: klenart@dykema.com

        *Attorneys for Defendant Ford Motor Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 26, 2022, I electronically filed the foregoing document with the Court via CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

      COLE, SCOTT & KISSANE, P.A.
*Attorneys for Defendant Ford Motor Company*
Cole, Scott & Kissane Building
9150 So. Dadeland Boulevard, Suite 1400
Miami, Florida 33156
E-Mail: henry.salas@csklegal.com
E-Mail: jennifer.ruiz@csklegal.com
E-Mail: Sean.Hernandez@csklegal.com
Telephone: 786-268-6419
Facsimile:  305-373-2294

By:   */s/ Henry Salas*
       Henry Salas, Esq.
       FBN: 815268
       Sean Hernandez, Esq.
       FBN: 123834

4872-1571-3565.1

## **SERVICE LIST**

**Catherine Y.N. Gannon**
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
(206) 623-7292
Email: catherineg@hbsslaw.com

**Steve W. Berman**
Hagens Berman Sobol Shapiro, LLP
1918 Eighth Avenue
Suite 3300
Seattle, WA 98101
(206) 623-7292
Fax: 206-623-0594
Email: steve@hbsslaw.com

**Rachel Wagner Furst**
Grossman Roth Yaffa Cohen, P.A.
2525 Ponce de Leon Boulevard
Suite 1150
Coral Gables, FL 33134
305-442-8666
Email: rwf@grossmanroth.com

**Stuart Z. Grossman**
Grossman, Roth, Yaffa, Cohen, PA
2525 Ponce de Leon Boulevard
Suite 1150
Coral Gables, FL 33134
305-442-8666
Fax: 285-1668
Email: szg@grossmanroth.com